STATE OF IOWA, EX REL. ZENAS C. THORNBURG, Appellant, v. JENNIE C. HUEGLE, F. T. MORRIS, L. H. DE FORD, ANDREW GROVES, J. B. UHL, and J. H. MATHIS, AS MEMBERS OF THE BOARD OF SUPERVISORS, Appellees.

County Superintendent: QUALIFICATION: STATUTES.
Chapter 122, Acts 31st General Assembly, which became effective October 1, 1906, prescribes the qualification required of a candidate for the office of County Superintendent; and to be eligible to the office after the taking of effect of the Act, a candidate must have held, at the time of entering upon the duties of the office, either a first grade certificate, a State certificate or a lawful diploma issued in conformity with the provisions of that Act; and a certificate granted under the provisions of Code, section 2737, as amended, though unrevoked, did not constitute the holder elegible to the office.

*Appeal from Polk District Court.*— HON. W. H. McHENRY, Judge.

MONDAY, JUNE 10, 1907.

ACTION to test the defendant Huegle's title and right to hold the office of County Superintendent of schools in and for Polk County for the term beginning January 7, 1907. From a judgment dismissing the petition, plaintiff appeals. — *Reversed* and *remanded.*

*Bowen, Brockett & Weldy, Halloran & Starkey,* and *S. G. Van Auken,* for appellant.

*Carr, Hewitt, Parker & Wright,* and *S. F. Prouty,* for appellees.

PER CURIAM.— Relator was the County Superintendent of Polk county for the term commencing January, 1904, and ending in January, 1907, or when his successor was elected and qualified. At the regular election held in the year 1906 respondent, Jennie S. Huegle, was elected to said office. Plaintiff brought this action to test her right to said office, and secured a writ of injunction against the other defendants, who were members of the Board of Supervisors, restraining them from approving her bond and from inducting her into office. The claim made then and now is that said respondent was and is ineligible to hold the said office because she does not hold a first-grade certificate, a state certificate, or a life diploma as required by section 2, chapter 122, Acts 31st General Assembly. Defendants denied that respondent was disqualified, and alleged that she held a first-grade certificate issued by the County Superintendent of Lucas county, Iowa, on the 30th day of August, 1906. The case was tried to the court, resulting in a dissolution of the injunction and a dismissal of the petition. Relator appeals.

The question involves a construction of the statutes of the State, and we are in no manner concerned with the policy or apparent justice or injustice thereof. It is within the exclusive province of the Legislature to fix the qualifications for public office, and the courts have no concern therewith except to see that the statutes are observed. *State v. Covington,* 29 Ohio St. 102; *Darrow v. People,* 8 Colo. 417 (8 Pac. 661). Moreover, the Legislature, in the absence of constitutional prohibition, may at pleasure alter or add to the qualifications for office. Mechem on Public Officers, section 97. And an office created by statute may be abolished,

the term increased, or diminished, the manner of filling it changed by will of the Legislature at any time even during the term for which the then incumbent was elected or appointed. It may also declare the office vacant, or abolish the office by leaving it devoid of duties. *Bryan v. Cattell,* 15 Iowa, 538; *Atty. Gen. v. Squires,* 14 Cal. 13; *Conner v. New York,* 5 N. Y. 285. The necessary qualifications must exist either at the time of the election or at the time of entering upon the duties of the office, as the statutes may indicate or direct. *State v. Holman,* 58 Minn. 219 (59 N. W. 1006). Generally speaking, if the words used are " eligible to office " or the equivalent, they mean eligibility at the time of entering upon the office, and not at the time of election. *People v. Hamilton,* 24 Ill. App. 609; *Smith v. Moore,* 90 Ind. 294; *Privett v. Bickford,* 26 Kan. 52 (40 Am. Rep. 301); *State v. Smith,* 14 Wis. 497; *Kirkpatrick v. Brownfield,* 97 Ky. 558 (31 S. W. 137, 29 L. R. A. 703, 53 Am. St. Rep. 422); *Demaree v. Scales,* 50 Kan. 275 (32 Pac. 1123, 20 L. R. A. 97, 34 Am. St. Rep. 113); *Shuck v. State,* 136 Ind. 63 (35 N. E. 993); *People v. Leonard,* 73 Cal. 230 (14 Pac. 853). But, whichever view be taken of this matter, the statute we have now to consider went into force and effect October 1, 1906, and provides that the county superintendent shall be the holder of a first-grade certificate as provided in that Act or of a state certificate or of a life diploma. So that the qualifications required were in force both at the time of election and at the time when the term of office began.

We are now brought to the question: Was respondent qualified at the time of her election, or, rather when she entered upon the office to which she was elected? The Act fixing the qualifications to which we have already referred was passed and approved April 5, 1906, and by its terms was to go into effect October 1, 1906. By its terms it provided what a first-grade certificate was under the Act; the provision being as follows: " Sec. 7. First Grade Certifi-

cate — Renewal. Applicants who have taught successfully for at least thirty-six weeks, or who have completed a course of study in an approved college or normal school and whose examination entitles them to the first-grade certificate, shall receive the same for a term of three years from the date thereof, and such certificate shall be renewable without examination provided the applicants shall show by examination or otherwise that at least one line of professional inquiry has been successfully conducted during the life of the certificate, it being made the duty of the board to forward with each certificate subject to renewal, outlines setting forth various lines of professional study. It is provided further that each application for renewal shall be accompanied by such proof of successful experience and professional spirit as the educational board of examiners may require." Acts 1906, chapter 122.

The examination referred to is provided for in section 4 of the Act, and is to be under the supervision of an educational board of examiners created by the Act. Manifestly respondent did not hold that kind of certificate. The Act also says that one holding a State certificate is also eligible. This relates to certificates issued by the State Board of Education Examiners under the provisions of sections 2629, 2630, and 2631 of the Code, as amended by Acts of the Twenty-Eighth General Assembly (chapters 95, 96) and the Twenty-Ninth General Assembly (page 71, chapter 114). It is very clear that respondent did not hold a State certificate either at the time she was elected or subsequently. No one claims that respondent held a life diploma. But she says that she held a certificate issued by a county superintendent under section 2737 for the term of two years, that this was not revoked by the passage of the Acts of the Thirty-First General Assembly, and that she was thereunder eligible to the office to which she was elected. With the question as to whether or not respondent's certificate was suspended, canceled, or set aside we have nothing to do at present, for we

are dealing with qualifications for office. By section 11, chapter 122, Acts 31st General Assembly, it is provided: " Sec. 11. Certificates Renewed — Conditions. Any person who has held a first-grade certificate or a special certificate in any county of this State for one or more years prior to the taking effect of this Act may have the same renewed by the Board of Examiners, provided said person has taught continuously during the preceding school year, and provided further, that the members of the school board of the school corporation and the county superintendent of the county where such person has been employed and, if in a graded school, the principal or superintendent under whom such person has taught, certify to the success of the applicant in teaching and in government, and unite in recommending the applicant as a teacher of efficiency, scholarship and professional spirit. Under like recommendations the holders of second-grade certificates with first-grade per cents may have such credit given in lieu of the examination as the board may determine."

No one contends that respondent complied with this Act or that she had any rights thereunder. Her certificate was not renewed, nor could it have been, so that respondent did not have any sort of certificate as provided for in the Act under consideration, unless it be that a first-grade certificate, issued after the law was passed, but before it went into effect, is the equivalent of a first-grade certificate as provided in the Act. To so hold would not only be doing violence to the express language of the Act, but in contravention of its spirit and against the clear legislative intent. Chapter 122, Acts 31st General Assembly, expressly repeals sections 2735, 2736, and 2737 of the Code, being the sections under which respondents's certificate was granted, but does not repeal the provisions under which state certificates or life certificates were issued. Moreover, section 2734, fixing the then qualifications for county superintendents when first amended by section 1, chapter 85, Acts 27th Gen-

eral Assembly, expressly provided that a holder of a two-year certificate under section 2737 of the Code might be a county superintendent. The Act in question removes any doubt upon this question of qualification by omitting this language and expressly repealing sections 2734, 2735, 2736, and 2737, not only as they originally stood, but as amended by the Acts of the Twenty-Seventh General Assembly, which provided that one holding such a certificate as respondent now has• was eligible to the office of county superintendent. The Legislature could not in clearer language have indicated that one holding a two-year certificate under section 2737 was not eligible to office than it did when it repealed section 2734 of the Code Supplement and especially provided that the county superintendent should be a holder of a first-grade certificate as provided in the act then passed. There is absolutely no room for construction or implication. Respondent may have had a right to teach, although on that question we express no opinion, but neither when elected, nor when she was ready to assume the duties of the office, was she qualified to do so under the law. No one has a right to an office no matter how long he may have been holding it; and the fact that there were many efficient county superintendents who could not qualify under the new law, and could not, therefore, be candidates for re-election, or thereafter serve the people as they had been doing, is no reason for abrogating a law made by the Legislature for the manifest purpose of increasing efficiency in the educational forces and systems of the State. It matters not that the electors have selected respondent for the office. They have no right to fix the qualifications for office or to determine whether or not the candidate possesses those required by the Legislature. Such an argument would deny to the Legislature its right to fix qualifications for office which, in the absence of constitutional limitations, have nowhere been denied. Neither is it for us to fix the qualifications for office, nor to say that one not possessing those named by the

Legislature is as well or better qualified than some other to held the position. Respondent may be ever so good a teacher and may make ever so good a superintendent, and yet we have no right to install her in office or permit her to assume the duties thereof when we find, as we must in this case, that she does not possess the qualifications required by law.

The judgment and decree must therefore be reversed, and cause remanded for one in harmony with this opinion. — *Reversed* and *remanded*.