STATE OF IOWA, EX REL. J. F. KIRBY, County Attorney of
    Iowa County, H. W. BYERS, Attorney-General, Ap-
    pellees, v. A. M. HENDERSON, Mayor of Marengo,
    Iowa, Appellant.

**Officers:** PROCEEDING FOR REMOVAL: INTOXICATION: EVIDENCE. The
evidence in a proceeding to remove an officer for intoxication
will be scrutinized with care, but in the instant case it is held
sufficient to support a removal of the defendant from the office
of mayor.

**Same:** REMOVAL OF MAYOR. The duties of a mayor are continuous,
at least during office hours, and he may be removed from office
for intoxication incapacitating him for the performance of offi-
cial duty, although no official duty devolved upon him at that
time and place. It is not necessary to plead and prove official
as distinguished from private misconduct.

**Same:** PETITION: SUFFICIENCY. A petition for the removal of a
mayor on the ground of intoxication, which alleges the material
fact that while he was the qualified and acting mayor, he was
guilty of intoxication on specified dates is sufficient, although
not in terms characterizing the act as malfeasance in office.

**Same:** TRIAL BY JURY: CONSTITUTIONAL GUARANTY. A mayor whom
it is sought to remove from office on the ground of malfeasance
in office has no constitutional right to a trial by jury.

**Same:** QUALIFICATION FOR OFFICE: REMOVAL FOR INTOXICATION. The
right of a majority of voters to elect a mayor is subject to legis-
lative power to prescribe his qualifications and to specify grounds
of removal. So that the question of his drinking habits can not
be settled as an issue at the election, thus barring a right of
removal for intoxication.

*Appeal from Iowa District Court.*—HON. BYRON W.
                    PRESTON, Judge.

WEDNESDAY, FEBRUARY 9, 1910.

THIS is a proceeding under chapter 78, Acts 33d Gen-

eral Assembly, for the removal of the defendant as mayor of the city of Marengo. There was a trial to the court which resulted in an order of removal. The defendant has appealed.—*Affirmed.*

*Wade, Dutcher & Davis, Dower & Murphy,* and *John Cronin,* for appellant.

*H. W. Byers* and *J. F. Kirby,* for appellees.

PER CURIAM.—The petition in this case is in the nature of an information against the defendant filed by the Attorney-General of the state and by the county attorney of Iowa County, and charging that the defendant had been guilty of intoxication on many dates specified therein, and that during all of such time he was the duly qualified and acting mayor of the city of Marengo. The prayer was that he be suspended from office pending hearing, and that, upon final hearing, he be removed from office. The defendant filed an answer in two counts. The first count was a general denial, with the following qualification: He admits that on or about the dates named he drank intoxicating liquors, but denies that he drank the same to excess or to such an extent as to render him drunk or intoxicated within the meaning of the law, and as charged, or to such a degree or extent as to in any manner interfere with the performance of his duties as mayor. In a second count of his answer the defendant averred, in substance, that he has for many years "drunk intoxicating liquors to the same extent that he did at the times charged herein," and that he did so prior to his election to the office of mayor, and that the electors had full knowledge of the facts with reference to his drinking, and that the same was an issue in the campaign at which he was elected, and with such knowledge the electors voted for him and elected him, that the statute under which these proceedings are brought was en-

acted, subsequent to his election, and that the same has therefore no application to him.

We will take up first the question of fact involved in the case. On the trial many witnesses were examined on behalf of plaintiff in support of the specifications of the petition. If these witnesses are to be believed, then the defendant was guilty of intoxication within the meaning of the act referred to. On the contrary, many witnesses testified on behalf of defendant to the effect that they never saw him intoxicated. Some of these witnesses contradicted witnesses on behalf of the plaintiff with reference to specific times. Others testified to their long acquaintance with the defendant, and that they had never known him to be intoxicated. Some of them testified that they had never known or heard of his drinking intoxicating liquors. The defendant was a witness in his own behalf, and testified with manifest candor. His testimony as presented in appellant's abstract undoubtedly presents the most favorable construction which can be placed upon the facts from his point of view, and it is as follows:

1. OFFICERS: proceeding for removal: intoxication: evidence.

> As to the use of liquor, well, I drank some almost every day during that time. I drank some in the morning for my catarrh and throat. For two or three months I could not eat any breakfast, a form of catarrh caused irritation of the throat, and I used liquor to clear that out. This liquor was used at my house. Then I would get some liquor around among my friends. Sometimes they would offer me a drink, and I would take a drink. I had lots to keep me worrying. I was broken down and worn out. It was principally my nerves. Lots of days I could not work, and under the conditions I would use liquor to brace me up. A great many days I did not touch it at all. Some days I would take a drink, maybe two or three drinks, depending on my condition.

This testimony is set forth more elaborately and somewhat more strongly in appellee's amended abstract. The

following from the appellee's amended abstract is fairly sustained by the transcript:

I had the liquor at my house. On other occasions I would get a good deal around among my friends, one and another. Sometimes they would offer me a drink and I would take a drink. I have a good many friends, and on different occasions I would take a drink when they were drinking. During the day I would often drink different times. . . . It is my custom to drink whisky when I drink liquor. . . . I could not give you any idea of how many times I had taken whisky that day. Not a great many times. I probably drank some uptown that day. I did not drink anything at home unless in the morning. I could not tell you that particular day just where I drank. Sometimes wherever anybody would be drinking, if it would be passed around, I would take a drink. If I was alone when I took a drink, it would generally be in my office. . . . I drank with my friends. Sometimes I might drink with other parties if I felt like a drink. There was no place here at that time for the lawful sale of liquor. It would just be somebody who had a bottle and was passing it around. It was always whisky.

The substance of this testimony is that the defendant was during all the time covered by the inquiry, and for many years previous thereto, a habitual drinker of whisky, but the quantity and frequency were irregular. We will not enter into a detailed discussion of the evidence. It is sufficient to say that the testimony of the defendant is more corroborative of plaintiff's witnesses than it is of the larger part of defendant's witnesses. The trial court found that many of the specifications of fact were sufficiently proved. It is undoubtedly true that the evidence in such a proceeding as this ought to be scrutinized carefully lest the act in question be utilized as a mere means of petty persecution and lest a great wrong be thereby done to an incumbent of office. With these considerations in mind, we have gone through the evidence with great care, and see no way whereby a contrary conclusion could justly be reached.

II.   The act in question was enacted under the fol-
lowing title:   "An act authorizing the district court or
judge to remove officers for misfeasance, malfeasance, or
nonfeasance in office and providing the meth-
od of procedure therefor."   Acts 33d General
Assembly, chapter 78.   Section 1 of such act
is as follows:   "Section 1.   Any county attorney, sheriff,
mayor, police officer, marshal or constable shall be re-
moved from office by the district court or judge upon
charges made in writing and hearing thereunder for the
following causes:   (1) For willful or habitual neglect or
refusal to perform the duties of his office.   (2) For willful
misconduct or maladministration in office.   (3) For cor-
ruption.   (4) For extortion.   (5) Upon conviction of a
felony.   (6) For intoxication or upon conviction of being
intoxicated."   It is argued by appellant that the title of
the act refers only to misfeasance, malfeasance, or non-
feasance in office, and that, therefore, section 1, above
quoted, should be construed in the light of the title and
that the "intoxication" referred to therein as a cause of
removal means intoxication in office and that it can have
no reference to one's private habits as distinguished from
his official duties.   To put it in another way, it is argued
that "private misconduct" can not be made the ground of
removal as distinguished from official misconduct.   It is
argued further that, if the contrary construction be put
upon section 1, then it is unconstitutional because the sub-
ject was not expressed in the title.   The argument pur-
ports to be based upon a remark in the case of *State v.
Welsh,* 109 Iowa, 19.   What was really held in that case
was that voluntary intoxication while engaged in the per-
formance of an official duty was "willful misconduct" with-
in the meaning of the statute then in force, although such
statute did not include intoxication as a ground for re-
moval.   The argument proceeds upon the theory that "pri-
vate misconduct" and "official misconduct" are necessarily

2. SAME: re-
moval of
mayor.

separate and distinct, and that every act of misconduct of one holding office must be referred to one class or the other, and that the burden is upon the plaintiff in this case both to plead and to prove that the misconduct shown on the part of the defendant was official and not private. The fallacy of the argument is that it is purely theoretical, and not practical.

The act in question is not merely penal. The grounds of removal go to the question of qualification as such qualification shall be indicated by the specified acts of misconduct. Counsel would not, of course, argue that an official could be privately intoxicated and officially sober. The most they would claim would be that an official might be intoxicated at a time and place and under circumstances when no official duties devolved upon him, and that in that sense his private misconduct did not actively interfere with the performance of his official duties. The practical fact, however, in this case, is that the defendant was intoxicated on various dates during business hours in the town of his jurisdiction, when such intoxication would necessarily interfere with the proper discharge of his official duties. The most that could be claimed for him would be that he undertook no official duties during the period of intoxication. The argument is that this would be private misconduct, and not official. Carried to its logical conclusion, an official who was so intoxicated that he could not undertake official business could not thereby be guilty of official misconduct. An official can not thus justify himself for voluntarily incapacitating himself for the performance of his official duties. The duties of the mayor of a city are continuing duties, at least during business hours. His office is deemed open during such hours, and his official responsibility is constant. In this case the defendant owed an official duty with reference to the very men who passed the "bottle" and from whom he procured intoxicating liquors unlawfully. We have no occasion, therefore, to deal with the

abstract distinction between private misconduct and official misconduct. The intoxication shown in this case constituted both.

It is argued that the petition was fatally defective, in that it failed to allege any official misconduct. The petition did not in terms characterize the acts of the defendant as "malfeasance in office." It did, however, set forth the material facts; i. e., that while the defendant was the qualified and acting mayor of the town he was guilty of intoxication on many specified dates from March 28 to May 25, 1909. We think that the petition sufficiently stated a *prima facie* case. It was somewhat broad in its terms, and perhaps indefinite. If so, it was vulnerable to a proper motion. The very question which is now argued was made an issue by the defendant's answer which pleaded affirmatively that the acts alleged were private, and not official.

3. SAME: petition: sufficiency.

III. When the case was called for trial below defendant demanded a jury, which was refused, and of this refusal he now complains. His contention is that such refusal was a violation of his constitutional rights under section 9, article 1, which is as follows: "The right of trial by jury shall remain inviolate, but the General Assembly may authorize trial by jury of a less number than twelve men in inferior courts, but no person shall be deprived of life, liberty or property without due process of law." Our previous cases have settled the question that the constitutional right to a trial by jury extends only to those cases where a jury was necessary according to the course of procedure at common law. . *State v. Orwig,* 25 Iowa, 280; *Littleton v. Fritz,* 65 Iowa, 488; *Martin v. Blattner,* 68 Iowa, 286. It is also settled by our previous decisions that the right of an incumbent to his office is not a right of property within the meaning of the statute. *Shaw v. Marshalltown,* 131 Iowa, 128; *State v. Huegle,* 135 Iowa, 100; *Bryan v. Cattell,* 15

4. SAME: trial by jury: constitutional guaranty.

Iowa, 538.   Section 20, article 3, Constitution, provides as follows for the removal of officers: "The Governor, judges of the Supreme and district courts and other state officers shall be liable to impeachment for any misdemeanor or malfeasance in office. . . . All other civil officers shall be tried for misdemeanors and malfeasance in office in such manner as the General Assembly may provide." There is some dispute in the arguments as to whether the office of mayor is to be deemed as covered by the provisions of the Constitution above quoted.   Such office is not strictly a constitutional office.   It is a creation merely of the statute.   Nevertheless it is argued by the appellant that, inasmuch as it was in existence when the Constitution was adopted; the language of the Constitution "and all other civil officials" is broad enough to cover it, and that the incumbent of such office is thereby protected by this provision of the Constitution.   Conceding the soundness of this argument for the purpose of this case, the section above quoted expressly confers power upon the Legislature to provide the manner of trial for misdemeanors and malfeasance in such office.   Section 5 of the act under which this proceeding is prosecuted expressly provides that the "proceeding shall be summary in its nature and tryable as an equitable action."   We think, therefore, that no constitutional right of the defendant was invaded.   This is in accord, also, with the holding in other jurisdictions.   *Woods v. Varnum,* 85 Cal. 639 (24 Pac. 843); *Rankin v. Jauman,* 4 Idaho, 53 (36 Pac. 502); *Lynch v. Chase,* 55 Kan. 367 (40 Pac. 666); *Moore v. Strickling,* 46 W. Va. 515 (33 S. E. 274, 50 L. R. A. 279); *People v. Stuart,* 74 Mich. 411 (41 N. W. 1093, 16 Am. St. Rep. 644); *Fuller v. Ellis,* 98 Mich. 96 (57 N. W. 33).

The contention that the question of defendant's drinking habits was settled as an issue at the election, and that therefore he is not amenable to this proceeding, is without merit.   It is undoubtedly true that the defendant is held

in high esteem notwithstanding his drinking habits by a majority of the electors. He is deemed by them to be a man of strong personality and of many commendable qualities. But the power of selection of the majority in such a case is not absolute. It is subject to the power of the Legislature to prescribe qualifications. And likewise it is subject to the power of the Legislature to specify constitutional grounds of removal. In so far as this contention presents any constitutional question, it ·is fully covered by the discussion in *State v. Huegle,* 135 Iowa, 100. Indeed, every constitutional question argued by counsel has been fully discussed in our own cases which are cited above, and it will serve no useful purpose that we go over the ground again by way of elaborate discussion. We do not overlook the great importance of the case, not only to the defendant, but to all incumbents of office and to the public.

5. SAME: qualification for office: removal for intoxication.

It is sufficient to say that we have given the case the full consideration which its importance deserves, and have reached the conclusion that the order of the trial court must be *affirmed.*