# Shepherd *v.* Sartain.

## *Election Contest.*

(Decided June 30, 1913.   Rehearing denied December 18, 1913.
64 South. 57.)

1. *Officers; Eligibility.*—Subdivision 7 of section 1467, Code 1907, is a legislative declaration of the provisions of section 280 of the Constitution of 1901, and it cannot be held that one holding an office of profit under the government of the United States is ineligible to election to a state office, as is the case of those disqualified in the first six subdivisions of said section of the Code, hence, one holding an office under the United States government may be elected to a state office, the only requirement being that he cannot qualify for the state office unless he resigns the Federal office.

2. *Same.*—A postmaster who was elected to the office of judge of probate was denied induction into office, and while retaining his Federal office, brought an action contesting the right of the holder to the office; held, that while a judgment in his favor will be construed as reverting back to the time he was entitled to begin his holding, for his protection as an office holder wrongfully excluded, yet he was not holding office from the time he was entitled to be inducted into office so as to disqualify him under the provisions of section 1467, Code 1907, and that this conclusion is strengthened by the provisions of section 1473.

3. *Election; Contest; Condition Precedent.*—The courts cannot as a condition precedent to considering a contest require the contestant to file a declaration of his purpose to vacate his federal office if successful, where the canvassing board denied his election to a state office.

4. *Same; Procedure.*—Under section 473, Code 1907, the trial judge may examine the ballots before the evidence is all in, and without waiting for evidence of the legality of ballots shown by the record to be only prima facie illegal, since the only person who could be injured thereby being the voters whose right to secrecy might be violated.

5. *Same; Ballot; Validity.*—The reception of the vote by the election manager prima facie establishes its validity, and the burden of establishing its invalidity is upon him who assails it.

6. *Same; Registration.*—The registration books and lists prepared and kept by the county board of registrars are conclusive as to the facts of the registration of those voters whose names affirmatively appear thereon and presumptive evidence of their qualification.

7. *Same.*—Unless their registration is evidenced by certificates issued as provided by law, the registration books and lists are conclusive that the voters whose names do not appear therein are not registered voters, and not entitled to vote.

[Shepherd v. Sartain.]

8. *Same; Poll Tax; Receipt.*—The poll tax receipt stubs kept by the tax collectors for each year as required by section 2075, Code 1907, are presumptive evidence of the facts recited by them, and it will be presumed that such tax has not been paid where they do not show that a voter has paid his poll tax.

9. *Same.*—Where the general tax record showing poll tax payments, kept by the tax collector prior to the enactment of the statute requiring such separate poll tax records, does not affirmatively show that a voter has paid his poll tax, it will be presumed that the tax has not been paid.

10. *Same; Voters; Pol Tax.*—The certificate of the probate judge as to whether the registration records show registration and the poll tax records show payment of poll tax is prima facie evidence of the matters therein contained.

11. *Same; Registration.*—Under section 187, Constitution 1901, and sections 316 and 320, Code 1907, a registered voter, who changes his legal residence from one county to another must register in the county of his new residence in order to be entitled to vote therein.

12. *Same; Residence.*—Where a voter abandoned his residence in this state and acquired a legal residence in a foreign state, and returns, he cannot again vote in this state until he has acquired by a new period of residence qualifying him as a citizen, and a new registration as prescribed by law for the original registration, although he was a registered voter when he abandoned his residence in this state.

13. *Same; Poll Tax; Place of Payment.*—In view of section 259, Constitution 1901, and Code section 1769, poll taxes must be paid in the county in which the voter legally resides at the time it is due.

14. *Same.*—The poll tax requirements of the Constitution and the Code do not cease upon a temporary absence from the state; hence, a voter, subject to the payment of the poll tax, who leaves the state for any length of time short of acquiring a legal residence in a foreign state, must pay the poll tax accruing during the period of his absence, as a prerequisite to voting.

15. *Same; Poll Tax; Exemption.*—Under subdivision 6, section 2061, Code 1907, the voter claiming the disability has the burden of showing that such disability began before the tax became due and that his taxable property did not exceed $500 at that time.

16. *Same; Payment; Evidence.*—The fact that a voter sent the amount of his poll tax to another to be paid is no evidence of its payment.

17. *Same.*—Where the records show the payment by a voter of his poll taxes for a period of years, with a single exception, and also the payment of two taxes for one year, it will be presumed that one of the duplicated payments was intended for the omitted year, and it will be treated as paid.

18. *Same; Excuse.*—The refusal of a collector to accept payment of a poll tax does not excuse its non-payment; the duty being on the voter, if necessary to protect his legal rights, to resort to coercive legal process.

[Shepherd v. Sartain.]

19. *Same.*—The failure of a voter to pay poll tax is not excused by reason of the collector's advice that such tax is not due, or such advice from other source.

20. *Same; Presumption.*—Nothing appearing to the contrary, it will be presumed that a voter became forty-five years of age at the earliest day consistent with the record recitals, where the record only shows that a voter registered as of that age in a stated year; if registered as forty-five in July, he will be presumed to have reached that age before October of the previous year.

21. *Same; Contest; Review.*—The ascertainment of the existence of a permanent disability excusing a voter from the payment of poll tax is peculiarly a question for the trial court, and its discretion will not be reviewed unless it appears that it has been abused.

22. *Same; Registration.*—The acceptance of a voter by the registrars as one qualified for registration is an ascertainment that he is twenty-one years of age and although he may not have reached his majority at the time of registration, if he votes he is estopped from claiming exemption from payment of poll tax.

23. *Same.*—Where the record only shows that a voter registered as twenty-one in a stated year, it will be presumed that he came of age and registered after the first day of October of that year, if the courts judicially know that the registration books had been opened thereafter.

24. *Same; Residence.*—Where a voter moves away from an existing domicile and acquires a home in another place, it will be presumed that he has changed his legal residence.

25. *Same; Contest; Review.*—In an election contest case the finding of the trial court on oral evidence will not be disturbed on appeal, unless so manifestly against the weight of the evidence that the trial court would set aside a verdict of a jury rendered on the same testimony.

26. *Evidence; Best; Poll Tax Receipt.*—The ordinary rules of law governing receipts are applicable to poll tax receipts, and they are not the best evidence of such payment, although admissible in evidence, in such a sense as to forbid parol proof thereof.

27. *Same; Opinion.*—While it is competent to show the payment of poll taxes by parol evidence, and thus contradict the record, a witness cannot testify as to his belief or opinion that he has paid his poll tax.

28. *Names; Identity; Presumption.*—The courts take judicial notice that mistakes in names and in initials are of frequent occurrence, and where the poll list shows that A. B. N. voted, while the registration shows only A. V. N., it will be presumed that the person voting was the person registered, nothing appearing to the contrary.

29. *Taxation; Poll Tax; Persons Liable.*—The liability of persons between the ages of twenty-one and forty-five for the payment of poll tax is dependent upon the status of the person at the beginning of each tax year, which is fixed by section 194, Constitution 1901.

30. *Same.*—One who becomes twenty-one years of age by the first day of October is subject to poll tax due on that day, but one who

becomes twenty-one after the first day of October is not liable to the poll tax until the succeeding October.

31. *Same.*—One reaching forty-five years of age before the first day of October of any year is not subject to poll tax for that year, but one who does not reach that age until after the first day of October is liable for the poll tax due on that day.

32. *Same; Exemption.*—Under sections 1689-1701, Code 1907, the former exemption of township school trustees from payment of poll taxes, will be extended by implication to the new district school trustees, there being nothing to show a legislative purpose to abolish the privileges attached to the office of township school trustee, which was supplanted by that of district trustees.

33. *Same; Statutory Exemption.*—The omission from the Code of 1907, of the provision exempting school trustees from the payment of poll taxes, will not affect the right to exemption provided in the Code of 1896, for those trustees who completed the terms beginning prior to the adoption of the Code of 1907, as this is in accord with contemporaneous popular construction.

34. *Same.*—The courts have considerable latitude in the application of the exemption provided by subdivision 6, section 2061, Code 1907, to individual cases although the disability must be one either physical or mental which materially impairs the voter's aptitude or capacity for earning a livelihood.

35. *Same.*—No recurrent or intermittent maladies will bring a person within the exemption from poll tax provided by subdivision 6, section 2061, Code 1907.

36. *Same; Constitutional Provision; Time of Payment.*—In view of the provisions of section 194 of the Constitution, the legislature cannot change the time for the accrual of poll tax.

37. *Same.*—General Acts 1907, p. 69, is violative of the provisions of section 194, Constitution 1901, and does not have the effect to change the time poll taxes are payable.

38. *Statutes; Construction; Contemporaneous.*—Interpretation by the Attorney General and popular interpretation as exemplified in practice for a number of years will be given weight as a factor in judicial construction of a statute where its meaning is doubtful.

(McClellan, J., dissents.)

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

The proper authorities having declared James W. Shepherd elected judge of probate of Walker county, and having denied Charles M. Sartain the right to said office, he files contest of said election. From a judgment for contestant contestee appeals. Affirmed.

See in this connection 172 Ala. 205, 55 South. 627; 173 Ala. 474, 55 South. 919.

BANKHEAD & BANKHEAD, and F. A. GAMBLE, for appellant. It is not denied that contestant continued to hold the office of postmaster for ten or eleven months after his alleged election as probate judge, and hence, it appears that the court was in error in sustaining demurrers to the plea in abatement.—Sec. 280, Constitution 1901; 55 Am. Rep. 197; 4 Bush. 89; 21 Am. Rep. 338; 4 B. Monroe 224; 39 Am. Rep. 231; 63 Am. Rep. 257; 29 Cyc. 1384. As soon as the majority of votes had been cast for contestee at the election he became legally and fully entitled to the office.—Authorities supra. A commission will not confer title if it is issued to a person not entitled to the office.—*Womack v. Holloway*, 2 Ala. 31; *Plowman v. Thornton*, 52 Ala. 569; 8 L. R. A. 228; 24 La. Ann. 19; 8 Ga. 360. The salary and fees go with the title to the office and belong to the de jure officer, even where he has been prevented from performing its duties.—*Colton v. Price*, 50 Ala. 424; 29 Cyc. 1393; 8 A. & E. Enc. of Law, 808, and cases cited. The court was without authority to examine the ballots before the decision of the legality of the voters.— *Ex parte Owens*, 148 Ala. 402; *Black v. Tate*, 130 Ala. 514; Meechum on Public Officers, sec. 233. Counsel take up the groups reported and discuss their right to vote in virtue of the facts appearing, and in the light of the Constitution and statutes relative thereto.

R. A. COONER, O. D. STREET, and W. C. DAVIS, for appellee. The disqualification is not against being elected to office under the state, but is only against holding the state office while occupying an office of profit under the federal government.—Sec. 280, Constitution 1901; *State v. Green*, 154 Ala. 257; *Adams v. So. Ry.*, 167 Ala. 387; 8 Cyc. 734; 15 Am. St. Rep. 590. Constitutions are to be construed in their plain, untechnical sense.—

*Hagan v. Limestone County,* 160 Ala. 544; *Carroll v. State,* 58 Ala. 396; *Dorman v. State,* 34 Ala. 216. Special pleadings are not only not necessary, but are out of place in proceedings of this character.—*Griffin v. Wall,* 32 Ala. 149; *Wade v. Oates,* 112 Ala. 325; 9 Cyc. 410. The Legislature cannot be defining constitutional terminology either narrow or broaden the constitutional meaning.—Cooley's Const. Lim. 78; 98 Am. Dec. 272; 8 Heisk. 456; 68 Am. Dec. 65. One asserting disqualification must prove it.—*Blackmon v. State,* 98 Ala. 77; *Bell v. State,* 104 Ala. 79. In cases of this character it is settled that the finding of the court on the facts will be treated as the verdict of the jury.—*Skinner v. State,* 87 Ala. 105; *Dodd v. State,* 92 Ala. 61; *Ramey v. Peebles,* 108 Ala. 476.

SOMERVILLE, J.—The appellant has shown sufficient diligence in perfecting and prosecuting his appeal, and, in the exercise of our discretion in the enforcement of the rules of practice prescribed for such cases, the appellee's motions to dismiss the appeal and also to affirm the judgment for lack of diligence in those respects will be overruled. The appellee, Sartain, prosecuted a statutory contest of the edection of the appellant, Shepherd, to the office of probate judge of Walker county, at the general election in November, 1910, claiming that he was himself elected to that office by a majority vote of the qualified electors of the county. The canvassing board declared, upon the face of the returns, that Shepherd received 1,846 votes, and Sartain 1,820 votes, and that Shepherd was elected to the office. The trial court correctly found that by some fraudulent means the returns as originally certified from four of the precincts had been so altered as to deprive Sartain of 25 votes cast for him, and to give to Shepherd 20

votes to which he was not entitled. It further correctly found that 7 votes cast for Sartain, and 3 votes cast for Shepherd, were improperly rejected by the election managers, and these votes were added to the corrected total of each. The result thus arrived at, which we adopt as patently correct, was that Sartain's total vote was 1,852, and Shepherd's was 1,829. From these restated totals the number of illegal votes shown by the record to have been received by each will be deduced in order to obtain the final and decisive result.

Before proceeding to that conclusion, it is in order to determine a preliminary question of law presented by the action of the trial court in sustaining the contestant's demurrer to a special plea interposed by the contestee. This plea avers, in substance, that, at the time of the election here contested, the contestant was holding an office of profit under the United States, viz., the office of postmaster at Oakman, Walker county, Ala., with an annual salary in excess of $200; and that contestant has continued in said office since said election until the plea was filed in October, 1911.

The grounds of demurrer to the plea make the point that it does not show that the contestant was ineligible to election to the contested office at the time of his election.

Section 1467 of the Code of 1907 is: "The persons who are ineligible to, and disqualified for holding office under the authority of this state, are: * * * (7) No person holding an office of profit under the United States, shall, during his continuance in such office, hold any office of profit under this state; nor shall any person hold two offices of profit at one and the same time under this state, except notaries public." Subdivisions 1 to 6, inclusive, comprehend a categorical statement of the persons who are ineligible to and disqualified

from holding office. It is settled in this state, in harmony with reason and the weight of judicial authority, that "ineligible" here means inelectable—that is, not capable of being chosen—and hence the qualifications enumerated relate to the date of election, and not merely to the date of actual induction into office.—*Finklea v. Farish,* 160 Ala. 230, 237, 49 South. 366

It is the contention of the contestee, that the same doctrine applies also to the disqualification declared in subdivision 7, and hence that one holding any office of profit cannot, prior to his vacation thereof, be lawfully elected to another office under the authority of this state; his subsequent vacation of the first office before entering into the second not sufficing to qualify him for holding the latter. Our consideration of the history, language, and purpose of this provision has led us to a contrary conclusion. The pro-genitor of section 1467 of the present Code is found in section 105 of the Code of 1852, which enumerates seven classes of "persons who are ineligible to, and disqualified from holding office under the authority of this state"; subdivision 7 being: "Members of Congress, and persons holding any office of profit, or trust, under any foreign power, either of the states of this Union, or under the United States, other than the office of postmaster." Under the mandate of section 2 of article 16 of the Constitution of 1875, requiring the Legislature to give effect to section 1 of the article, subdivision 7 of the former statute was eliminated, and the new subdivision 7 was adopted in section 149 of the Code of 1876, in the exact language of the Constitution, which was; "Section 1. No person holding an office of profit under the United States, except postmasters whose annual salary does not exceed two hundred dollars, shall, during his continuance in such office, hold any office of profit under this

state; nor shall any person hold two offices of profit at one and the same time under this state, except justices of the peace, constables, notaries public and commissioners of deeds." Article 16, Const. 1875, is now incorporated in sections 280 and 282 of the present Constitution. As thus enacted, subdivision 7 remained unchanged until the adoption of the Code of 1907, when the exception in favor of postmasters was abolished.

It thus appears with reasonable certainty that subdivision 7 ceased to be a mere designation of a class of persons ineligible to as well as disqualified for holding office, and, wholly omitting the anterior denouncement of ineligibility to office, forbids only the holding of a state office during the occupancy of a preceding office. To hold that the word "ineligible" in the introductory clause of the statute is referable to subdivision 7, would be to assume a logical as well as a grammatical absurdity. A person who is ineligible to office is, ex vi termini, disqualified also for holding office after his election. This latter clause of the statute was wholly unnecessary except for the prevention of incumbency by appointment. But its use clearly indicates the conception of a disability distinct from that of ineligibility, and its exclusive use in subdivision 7 clearly confines the limitation to the holding of the second office. So the question presented is: What is the significance of the phrase "hold office," as used in the constitutional provisions which the statute designs to execute?

Judge Freeman, with his usual accuracy, thus states the effect of such provisions: "In order to preserve a pure public policy, state Constitutions and statutes frequently provide that one and the same person shall not, at the same time, hold an office of profit or trust both under the state and under the national government, or that persons holding judicial offices shall not, at the

same time, hold other offices of trust or profit, or that the same person shall not, at the same time, hold two offices of profit or trust, or the like. Such provisions cover substantially the same ground as the common-law inhibition against the same person holding incompatible offices at the same time, and they also, in many cases, go further, and arbitrarily prohibit the holding of two offices which, at common law, would not be deemed to be incompatible. Hence, if the holding of two offices by the same person, at the same time, is inhibited by the Constitution or statute, a forbidden incompatibility is created similar in its effect to that of the common law, and as in the case of the latter, it is well settled by an overwhelming array of authority that the acceptance of a second office of the kind prohibited operates, ipso facto, to absolutely vacate the first office"—citing numerous authorities. See his monographic note to *Attorney General v. Oakman,* 126 Mich. 717, 86 N. W. 151, 86 Am. St. Rep. 583.

It is clear that the rule forbidding the holding of two offices at the same time, whether at the common law or under Constitutions and statutes, never contemplated a disability to be elected to the second office, but, on the contrary, conclusively affirms the legality and efficiency of such election. It is only the holding—that is, the occupation— of two offices at the same time that offends public policy, and is therefore forbidden by law. As pointed out by Judge Freeman in the note referred to (page 582), it is "the acceptance and qualification for the second office" which vacates the first, not merely the acceptance; the incompatibility of the two offices depending upon the inability of the holder to consistently discharge the duties of each. The broad distinction between ineligibility to office and disqualification for holding office has been frequently noted and conclusive-

ly demonstrated by able courts.—*State v. Murray,* 28 Wis. 96, 9 Am. Rep. 489; *Privett v. Bickford,* 26 Kan. 52, 40 Am. Rep. 301; *Com. v. Pyle,* 18 Pa. 519; *State v. Van Beek,* 87 Iowa, 569, 54 N. W. 525, 19 L. R. A. 622, 43 Am. St. Rep. 397, 403; *State v. Huegle,* 135 Iowa, 100, 112 N. W. 234.

Counsel for appellee have sought to escape the conclusion above indicated by invoking the distinction between double office holding where the first office is a federal or foreign office. But that fact does not enlarge or affect the incumbent's disqualification for holding a second office under the state. It merely prevents the automatic vacation of the federal office by the acceptance of and attempted qualification for the state office, which to be valid and effectual must be preceded by an actual vacation of the other office.

It is worthy of note that, if the construction contended for by the contestee in regard to federal officeholders be correct, the same rule must be applied under the express language of the Constitution and of the statute to state officeholders, with the result that no incumbent of a state office could be elected or appointed to any other state office except upon his prior vacation of the first office—a conclusion at war with the long settled practices of our people, and we believe never heretofore conceived of.

It is further urged for the contestee that, in contemplation of law, Sartain has been holding the office of probate judge ever since the date of his election; the theory of this contention being that his election, and not his qualification and commission, entitled him to the office, and that the judgment of the trial court affirming his election and right to the office relates back in its operation to the beginning of the term of office in January, 1911.

Conceding the validity of these propositions, the conclusion stated does not follow. "Holding office," within the inhibition under consideration, means qualifying and thereby entering into the office and assuming its obligations and becoming invested with its powers. For until one who is elected qualifies according to law he has no more right to serve than any intruder would have, and section 1473 of the Code expressly denounces upon him the criminal penalties imposed upon unlawful usurpers. Holding office is no more nor less than filling office, and, as said by Judge BRICKELL, in *Scott v. Strobach,* 49 Ala. 477, 485, an office is filled only when the commission is received, the official bond executed, and the oath of office taken. In *Hill v. State,* 1 Ala. 559, it was held that, while a commission issued to one not entitled to office did not destroy the claim of one having the legal right, its effect is to oust the legal claimant from the office until his right thereto is judicially determined. To the same effect is *Casey v. Bryce,* 173 Ala. 129, 55 South. 810. Certainly one who has been ousted from an office is in no sense holding that office. The technical fiction that the rightful claimant's term relates back to the beginning is for his protection merely, and cannot be turned to his destruction upon an inquiry like this.

The phrase "hold office" has doubtless been used in Constitutions and statutes with variant meanings, as illustrated by counsel in brief; but we think it has but one rational meaning here.

We therefore hold that the demurrers to the special plea was properly sustained.

We know of no principle upon which the trial court could or should have required of the contestant the filing of a declaration of his purpose to vacate the office of postmaster, as a condition to sustaining the de-

[Shepherd v. Sartain.]

murrer to the plea, or to rendering judgment in his favor for the office. As a practical proposition, however, it might be observed that he could hardly have made a more unequivocal declaration of such a purpose than by undertaking the labor and expense of a campaign for election to the office, and by assuming the extraordinary burden of contesting his adversary's election thereto.

Appellant complains of the action of the trial judge in examining all of the ballots shown by the records to be only prima facie illegal, in advance of his final conclusion upon the evidence, the result being that many legal votes were thus needlessly examined and the voters' right of secrecy unlawfully violated; in addition to which it is also urged that it was improper, as tending to biased conclusions, for the trial judge to know the political complexion of the votes before passing upon their legality.

These are questions of propriety and must be left to the discretion of the trial court. Section 473 of the Code provides that "in all contests of elections * * * the judge or chancellor presiding is authorized to make an examination of the ballots * * * so far as he may deem it necessary to arrive at a correct judgment." He is not required to wait until the evidence is all in, nor indeed to assume that there will be any evidence offered to overcome prima facie illegality.

So far as the violation of the secrecy of the ballots is concerned, the injury, if any, would be to the voters, and not to the contesting parties, and of it the latter cannot complain as erroneous judicial action prejudicial to them.

The record in this case is quite voluminous, and a consideration of the appeal upon its merits has entailed upon us the separate examination of nearly 1,000 con-

tested votes, and has involved the formulation and application of many specific rules and presumptions, some of which are apparently novel, but all of which are perhaps deducible from the general maxims of the law. A discussion of all these rules, with a citation of the authorities supposed to support them, would extend this opinion to an awkward and unreasonable length, and we do not attempt it. Suffice it to say that they have received careful consideration, and deliberate approval. They will now be stated, with as much regard for logical sequence as is conveniently practicable.

1. The reception of a vote by the election managers establishes its validity prima facie, and the burden of showing its invalidity is upon him who assails it.— *Black v. Pate,* 130 Ala. 514, 538, 30 South. 434.

2. The registration books and lists prepared and kept by the county board of registrars are conclusive as to the fact of the registration of those voters whose names affirmatively appear thereon, and are presumptive evidence of their qualifications as voters.

3. Such registration books and lists, duly authenticated, are conclusive evidence that voters whose names do not appear thereon are not registered voters and are not entitled to vote, unless their registration is evidenced by a certificate thereof issued as provided by law.

4. The poll tax receipt stubs kept by tax collectors for each year, as required by section 2075 of the Code, are presumptive evidence of the facts recited by them; and, where these do not affirmatively show that a voter has paid his poll tax for the particular year, it will be presumed, prima facie, that such tax has not been paid.

5. The same presumptions will be indulged with respect to the general tax record showing poll tax payments kept by tax collectors prior to the enactment of the statute requiring separate poll tax records.

6. The certificate of the judge of probate that the registration records, or the poll tax records, show registration or payment of the poll tax, is prima facie evidence of such facts; and such a certificate that such records fail to show registration, or payment of particular poll taxes, is equally prima facie evidence thereof.

7. Reading section 187 of the Constitution along with sections 316 and 320 of the Code, and construing them in connection with the entire system of laws relating to elections in this state, although, considered separately, their language might bear a less stringent meaning, we hold that, when a registered voter changes his legal residence from one county to another, he must register again in the county of his new residence in order to entitle him to vote therein. The imputation of any other meaning to the provisions referred to, though the requirement is expressed in negative terms, would reduce the whole scheme of registration to practical futility. An intention to destroy so valuable an agency by making re-registration permissive, merely, ought not to be imputed to the lawmakers if their language will reasonably bear a mandatory meaning, and we think it clearly does.

8. So, also, when a registered voter abandons his residence in this state and acquires a legal residence in a foreign state, he cannot vote again in this state until he has again qualified by a new period of residence and a new registration herein, as prescribed by law for an original registration.

9. With respect to the imposition of the poll tax upon those reaching the age of 21 years, and its suspension in favor of those reaching the age of 45 years, there has been some conflict of theory in the decisions of this court. The case of *Frost v. State ex rel. Clements*, 153 Ala. 654, 45 South. 203 (December 19, 1907), affirmed

the existence of poll tax years running from October 1, 1900, to October 1, 1901, and so on in succession, and made liability to the poll tax dependent upon the status of the person at the beginning of each tax year. That principle of liability was in effect disaffirmed in the later case of *Finklea v. Farish,* 160 Ala. 230, 49 South. 366 (April 21, 1909) ; three of the justices dissenting.

In accordance with the later case, which it is conceived involved a construction of section 194 of the Constitution, we now conclude:

(1) The Constitution (section 194) levies the poll tax according to age at the time the tax is declared to be due, viz., on the 1st day of October of each year, and the Legislature has no power to change the operation of that provision.

(2) One who becomes 21 years of age before the 1st day of October of any year is subject to the poll tax due on that day.

One who becomes 21 years of age after the 1st day of October of any year is not subject to the poll tax due on that day; his first poll tax being due on the 1st day of the next October.

(4) One who becomes 45 years of age before the 1st day of October of any year is not subject to the poll tax due on that day.

(5) One who becomes 45 years of age after the 1st day of October of any year is subject to the poll tax due on that day.

(6) The case of *Frost v. State ex rel. Clements,* 153 Ala. 654, 45 South. 203, is qualified to the extent above indicated, and section 4 of the Act of November 23, 1907 (Gen. Acts, Sp. Sess. 1907, p. 69), is declared unconstitutional and void because in conflict with section 194 of the Constitution.

In harmony with the foregoing rules, it is further held that:

[Shepherd v. Sartain.]

(7) Any status exempting one from the payment of the poll tax, which status begins before the 1st day of any October, and continues thereafter, relieves him from liability to the poll tax due on that day.

(8) The termination of such exempting status before the 1st day of any October subjects such person to the poll tax due on that day.

It will be observed that the theory of poll tax liability above expounded is simple of conception and easy of application—so much so in fact that mistake on the part of officers and voters is practically impossible.

10. A poll tax must be paid in the county in which the voter legally resides at the time it became due, and payment elsewhere is unauthorized and without effect. Aside from considerations of general policy and propriety, this requirement is fairly implied by section 1769 of the Code, and section 259 of the Constitution, which give to each county for school money all the poll taxes collected therein. This allotment should not be defeated by the payment of these taxes in foreign counties.

11. When any inhabitant of this state, subject to the payment of the poll tax, leaves the state, for whatever length of time, without acquiring a legal residence in a foreign state, his payment of the poll taxes that fall due during the period of his absence from the state is a prerequisite to legally voting upon his return to the state. While the poll tax is levied by the law (section 194 of the Constitution; section 2074 of the Code) upon male inhabitants of the state, one does not cease to be an inhabitant of the state by virtue of a temporary absence merely—at least within the meaning of that word as used in the provisions referred to.

12. Under the redistricting act of September 30, 1903 (Sess. Acts 1903, p. 289; Code 1907; §§ 1689-1701), the

former exemption of township school trustees (Code 1896, § 3575) from the payment of the poll tax will be extended by implication to the new district school trustees. The present Code has, by omission, repealed the exemption entirely; but those officers who served out terms beginning prior to the adoption of the Code are not affected thereby. Under the new system the changes were substantially only in boundaries and nomenclature, and we find nothing therein indicative of a legislative purpose to abolish the privileges attached to the office of school trustee. It is to be noted, also, that officials have been thus instructed by opinions emanating from the Attorney General of the state, and voters have habitually acted upon this theory of the law. Where the meaning of such laws is doubtful, official and popular interpretation, as exemplified in practice for a number of years, may be given some weight as a factor in their judicial construction.

13. Subdivision 6 of section 2061 of the Code exempts from poll tax "all persons permanently disabled, whose taxable property does not exceed five hundred dollars." The generality of the phrase "permanently disabled" exhibits, we think, a legislative purpose to leave to the courts considerable latitude in its application to individual cases. Associated as it is with its twin limitation of poverty of taxable estate, it must have reference to some disability, physical or mental, which materially impairs a person's aptitude or capacity for earning a living, or renders substantially more difficult his convenient and successful prosecution of those gainful occupations upon which, considering his training, opportunities, and station in life, he is dependent for self-support. The loss of one eye, or of a finger, for example, might not under some circumstances be a disability at all, though it is easy to conceive of cases where the conclusion might be otherwise.

14. Such disability must be permanent in the sense of being fixed and irremediable. Recurrent or intermittent maladies, or casual troubles, however serious for the time being, are clearly not within the privilege of the statute.

15. If the voter who exhibits the disability would excuse himself from the payment of any particular poll tax, he must assume the burden of showing its initiation before the tax became due, and that his taxable property did not exceed $500 at the time the tax became due. The ownership of less than that amount at other times during the year will not support the exemption, nor will the ownership of more than that amount at other times defeat it.

16. The ascertainment of the existence vel non of a permanent disability is peculiarly a matter for the trial court, and its conclusion should not be disturbed on appeal unless it very clearly appears that the purpose of the statute has been defeated or abused.

17. The acceptance of the voter by the registrars as one qualified for registration is an ascertainment that he is 21 years of age. And, although such voter was in fact under that age when he registered, yet if he votes under such registration he is thereby estopped from claiming exemption from the payment of such poll taxes as he would have been subject to had he in fact been of age when he registered. He cannot thereafter exercise the right of suffrage thus acquired without also discharging the conditions imposed upon it by law.

18. Poll tax receipts, though shown to be in existence, are not the best evidence of the fact of such payments, in such sense as to forbid parol proof thereof. This has always been the law as to payments of money in general, and our statutes have prescribed no stricter rule for proving the payment of taxes.—*Johnson v.*

*Cunningham,* 1 Ala. 249. The reason of the rule is that payment is a substantive independent fact of which the receipt is merely one form of evidence, and proof of the original fact is in no sense proof of the contents of the receipt.—*Dorough v. Harrington,* 148 Ala. 305, 42 South. 557; 17 Cyc. 473, 474. There are, indeed, cogent reasons for requiring proof of poll tax payments to be made exclusively by record or documentary evidence, but the Legislature has not seen fit to so ordain.

19. Although parol evidence is competent to show such payments, and thus to contradict the negative showing of the records, such evidence should be legal in its character, and the mere opinion or belief of the witness that he has paid a poll tax is not competent evidence thereof, unless it clearly appears that the witness' opinion or belief represents his recollection and judgment on facts, and is not mere surmise or conjecture. Trial courts should be very cautious in giving credence to such testimony in cases of this character.

20. Where the records negatively show the nonpayment of a voter's poll tax, the mere fact that the voter sent the money to be paid by another person, or left it with him with that understanding, is no evidence that it was so paid.

21. We judicially know that mistakes in names, and especially in initials, are of very frequent occurrence, and where the poll list shows that A. B. N. voted, while the registration list shows that only A. V. N. was registered, it will be presumed, in favor of the voter, nothing appearing to the contrary, that the two names describe the same person. Such a case is highly exceptional, and is not to be governed by the general rule that requires proof of the identity of persons described by variant names.

22. Where the records show the payment by a voter of his poll taxes for a series of years, with a single omis-

sion, and shows also the payment of two such taxes for a single year, thereby showing that he has paid the number of taxes to which he was subject, it will be presumed, nothing appearing to the contrary, that one of the duplicated payments was intended for the omitted year, and it will be treated as so paid.

23. The collector's refusal to accept the payment of a poll tax when tendered does not excuse its nonpayment. In such a case, if necessary, the voter must protect his rights by resort to coercive legal process against the recalcitrant officer.

24. The failure of a voter to pay a poll tax is not excused by reason of the collector's advice, or of any one's advice, that such tax is not due from the voter.

25. Where the records show only that a voter registered as 21 years of age in a stated year, it will be presumed, nothing appearing to the contrary, that he came of age and registered after the 1st day of October of that year, if the registration books are judicially known to have been open thereafter.

26. Where the records show only that a voter registered as 45 years of age in a stated year, it will be presumed, nothing appearing to the contrary, that he became 45 at the earliest day consistent with the record recitals. For example, if he registered as 45 in July, 1902, it will be presumed that he was 45 before the 1st day of October, 1901.

27. When a voter moves away from an existing domicile and acquires a home and resides in another place, it will be presumed, nothing appearing to the contrary, that he has changed his legal residence.

In the consideration of contested votes the trial judge divided them into seven groups, lettered from A to G, the first five of which embraced those held as legal either upon the records, or by the aid of oral testimony.

The result of these findings was to give to Sartain a net majority of 87 votes, without considering groups F and G. Group F, containing about 200 votes, was disposed of by simply finding that of the legal votes therein a majority were cast for Sartain. Group G embraced those votes held as illegal.

We have considered the votes in each group individually, and concluded upon their merits, except those in group G, as to which we have felt justified in reviewing only those of the votes cast for the appellant which are pointed out in the brief of his counsel and claimed as legal.

Our final conclusion is that in all of the groups, collectively there are 301 illegal votes which were cast for Sartain, and 328 illegal votes which were cast for Shepherd. Deducting these illegal votes from the prima facie or restated total vote of each the result shows that Sartain received 1,551 legal votes, and Shepherd 1,491.

In dealing with issues of fact we have followed the rule prescribed in the recent case of *Fulton v. Norris,* 162 Ala. 102, 49 South. 1028, a contested election case, wherein it was ruled that the finding of a trial court on testimony delivered viva voce will not be disturbed on appeal unless so manifestly against the weight of the evidence that a judge at nisi prius would set aside the verdict of a jury rendered on the same testimony.

To assert that we have compassed the enormous task here imposed upon us, involving as it does innumerable questions of fact as well as of law, without mistake more or less numerous, would be an unbecoming assumption of judicial infallibility. That we have reached an approximately correct result we have, however, no reason for seriously doubting.

We cannot on this record pronounce the rulings or the findings of the trial court erroneous, and the judgment will be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON, MAYFIELD, SAYRE, and DE GRAFFENRIED, JJ., concur. MCCLELLAN, J., dissents in part in a separate opinion.

MCCLELLAN, J.—(dissenting).—I am unable to concur in the affirmance entered on this appeal. It is possible the opinion I entertain in respect of two legal questions—entirely opposed to that prevailing with the majority—affecting the validity of votes cast in the election contested in this proceeding, would not alter the result now declared; but, as at present advised, I cannot so affirm.

In my opinion the construction of sections 178 and 194 of the Constitution of 1901, adopted in *Frost v. State ex rel.*, 153 Ala. 654, 45 South. 203 (decided December 19, 1907), is manifestly sound—so obviously well grounded that the majority of court did not overrule it in *Finklea v. Farish*, 160 Ala. 230, 49 South. 366, decided April 21, 1909. Justice Denson, writing the view entertained by three of the justices, there (160 Ala. 239, 240, 49 South. 369) said that the court "had stopped short of its duty in not expressly overruling the *Frost Case*, as, otherwise, the law is left in a state of uncertainty on a question of supreme importance." The correctness of that expression is abundantly proven in the record on this appeal. I have no doubt that, had the concurring justices in *Finklea v. Farish* been then (1909) convinced that the *Frost Case* was being overruled, their approval would not have been accorded that opinion. However, with the then unintended effect of

departing from the *Frost Case* now found as Justice Denson so plainly pointed out was the result, the Finklea-Farish pronouncement is made the basis for overruling the *Frost Case*, not that it is demonstrably unsound in its construction of sections 178 and 194 of the Constitution, but because that decision was subsequently delivered.

If the word "year" in the sections mentioned is treated as referring to "tax year," as the *Frost Case* ruled, necessarily the date of the exemption from the obligation to pay poll taxes because of permanent disability is an important factor in determining the number of legal votes cast for the respective litigants.