740 So.2d 999 (1999)
Inge P. JOHNSON
v.
BOARD OF CONTROL OF the EMPLOYEES' RETIREMENT SYSTEM OF ALABAMA.
1980406.
Supreme Court of Alabama.
January 15, 1999.
Rehearing Overruled June 25, 1999.
*1000 J. Mark White and William M. Bowen, Jr., of White, Dunn & Booker, Birmingham, for appellant.
William T. Stephens and William F. Kelley, Jr., Montgomery, for appellee.
*1001 James C. Barton, Artur G. Davis, and Anna R. Minor of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for amici curiae Alabama Ass'n of Circuit Judges and Alabama Ass'n of District Judges, in support of Judge Inge P. Johnson, on application for rehearing.
SHORES, Justice.
This case involves purely a question of law that has not heretofore been addressed by this Court: Does a circuit judge who meets the eligibility requirements for retirement as provided by Ala. Code 1975, § 12-18-6(b)(5), lose the right to those benefits upon his or her appointment as a United States district judge?
Inge Johnson, a circuit judge, who participated in the Judicial Retirement System for almost 20 years, has appealed from an order of the Board of Control of the Employees' Retirement System of Alabama denying her claim for retirement benefits.
The parties have stipulated to the following facts:
"1. Judge Johnson was a Circuit Judge for the 31st Judicial Circuit of Alabama from January 16, 1979, through October 22, 1998.
"2. On October 8, 1998, she was appointed a federal district judge for the Northern District of Alabama, Northwestern Division.
"3. On October 14, 1998, Judge Johnson submitted a form given to her by the Administrative Office of Courts entitled `Declaration of Intention to Retire Under the Judicial Retirement Act of the State of Alabama,' requesting that her retirement become effective on October 23, 1998. Provision number 5 of the form states: `I hereby certify that at the time my retirement becomes effective I shall take the oath of office as a retired judge and thereupon become an extra or additional Judge of the State of Alabama and file the said oath with the appropriate officials of the State of Alabama.' Judge Johnson `x-ed out' the language that stated `thereupon become an extra or additional Judge of the State of Alabama' and added the word `inactive' before `retired judge.' Section 12-18-7(b), Code of Alabama 1975, provides: `The retiring justice or judge, upon being retired, shall take the oath of office as a retired justice or judge and thereupon become an extra or additional judge of the state.'
"4. On October 14, 1998, Judge Johnson executed a form entitled `Oath of Office for Retired Judge or Justice' and specifically stated on the form that she was entering the office of `Inactive Retired Circuit Judge.'
"5. Section 12-18-10(h), Code of Alabama 1975, states: `Nothing contained in this section or hereafter shall limit the power and authority of the Chief Justice to transfer a retired justice or judge from inactive status to active status or from active status to inactive status as the public interest in his judgment requires.'
"6. Section 12-18-7(b), Code of Alabama 1975, states: `Therefore, on the request of the Chief Justice, the presiding judge of one of the courts of appeals or the Governor, any such retired justice or judge may serve on the Supreme Court, on either of the courts of appeals or on any circuit court in the state.'
"7. Judge Johnson has over 19 years of continuous active service as a circuit judge, as verified by a letter from Don Nelson of the Retirement System dated October 15, 1998.
"8. Judge Johnson met the service eligibility requirement for retirement as provided by Ala.Code 1975, § 12-18-6(b)(5):
"`(b) Any judge of a circuit court who was serving on September 18, 1973, who elects to become a member of the retirement fund hereby established and any circuit judge assuming such office after September 18, 1973, *1002 may elect to be retired pursuant to this article if he:
"`. . . .
"`(5) Has served for not less than 18 years or three full terms or a time equal to three full terms as a circuit judge.'
"9. The Declaration of Intent to Retire was endorsed by the Chief Justice of the Alabama Supreme Court on October 16, 1998. By letter dated October 15, 1998, Chief Justice Hooper transferred Judge Johnson to inactive status, effective October 23, 1998. Judge Johnson commenced service as a federal judge on October 23, 1998one day after she left office as a Circuit Court Judge.
"10. By letter dated October 27, 1998, R. Donald Nelson, Director of Benefits, Judicial Retirement Fund, Employee Retirement System of Alabama, notified Judge Johnson that her `application for retirement has been processed and your first regular retirement check will be mailed from this office on November 30, 1998.'
"11. Judge Johnson received one retirement check from the Judicial Retirement Fund for part of October.
"12. Judge Johnson was subsequently advised that William T. Stephens, Deputy Director and Counsel of the Retirement System, had determined that her retirement benefits would be suspended while she served as a federal judge.
"13. Judge Johnson and Lynda Flynt [director of the legal division of the Administrative Office of Courts] met with Mr. Stephens and Mr. Nelson on November 4, 1998. Judge Johnson was advised that it was the position of the Retirement System that as a federal judge she was ineligible for retirement benefits as a retired circuit court judge.
"14. The position of the Retirement System, based upon this Court's decision in Hogan v. Bronner, 491 So.2d 226 (Ala.1986), and the Opinions of the Attorney General issued to Judge John D. Snodgrass and Thomas T. Gallion was that as a retired state judge, Judge Johnson holds `office,' and is prohibited by § 280, Article XVII, Alabama Constitution of 1901, from holding two offices at the same time. Additionally, § 12-18-7(b), Code of Alabama 1975, states: `The retiring justice or judge, upon being retired, shall take the oath of office as a retired justice or judge and thereupon become an extra or additional judge of the state.'
"15. Mr. Stephens agreed to review any authority that Judge Johnson believed refuted the Retirement System's position. Through counsel, Judge Johnson submitted to the Retirement System essentially the same document she filed as her brief in the Supreme Court.
"16. Former Chief Justice Howell Heflin did not receive Judicial Retirement Benefits while serving in the U.S. Senate.
"17. Retired Circuit Judge Claude Harris did not receive Judicial Retirement Benefits while he served in the U.S. House of Representatives.
"18. Chief Justice Perry O. Hooper does not receive Judicial Retirement Benefits based upon his service and retirement as a circuit judge. Upon taking office as Chief Justice, his retirement benefits were suspended. Chief Justice Hooper repaid retirement benefits that he received from the Judicial Retirement Fund after it had been determined that he was entitled to back pay for the period of time his election contest was before the courts.
"19. No retired state judge has been appointed to and held the position of federal district court judge.
"20. The Board of Control met on December 2, 1998, and heard Judge Johnson's case. That same date, the Board voted and adopted the recommendation of the staff of the Employees' Retirement System that Judge Johnson's *1003 request that she be allowed to receive Judicial Retirement Fund Benefits while serving as a federal district court judge be denied.
"21. RSA states that Judge Johnson may withdraw her contributions plus interest from the Judicial Retirement Fund.
"22. RSA states that Judge Johnson may leave her contributions with the Judicial Retirement Fund, and in the event she predeceases her husband, he would be entitled to spousal/survivor benefits."
By constitutional provision, Alabama has historically denied the legislature the authority to provide for retirement benefits for state officers, including, by implication, judges. This restriction on the legislative power is currently found in Article IV, § 98, of the Alabama Constitution of 1901:
"The legislature shall not retire any officer on pay, or part pay, or make any grant to such retiring officer."
This constitutional prohibition against providing pensions for state officials led to legislation over the years creating supernumerary positions for certain state officials who met the statutory requirements for such positions. These statutes creating supernumerary positions were enacted to compensate certain public officials who had served the state for a number of years (as prescribed by statute) and who had reached a certain age (also prescribed by statute), provided that the official entering upon the supernumerary office performed certain duties prescribed by the legislature. See James v. Thompson, 392 So.2d 1178 (Ala.1981). Because Article IV, § 98, of the constitution prohibited laws granting retirement benefits to such state officials, the validity of these statutes depended upon the fact that these supernumerary officials performed certain duties and responsibilities [related to] the supernumerary office created. Although these statutes may have been drafted deliberately to evade the constitutional prohibition against legislation granting retirement pay to state officials, it is clear that the compensation provided was in exchange for services performed by the supernumerary officials, as opposed to compensation for past service to the state.
For example, by Act No. 357, Ala. Acts 1979 (§ 36-22-60 et seq., Ala.Code 1975), the legislature created the office of supernumerary sheriff. This act permitted a sheriff who had served for at least 16 years in law enforcement, 12 as sheriff, and who had reached 55 years of age to elect to become a supernumerary sheriff, subject to call to active duty by the Governor.
Sheriffs were not the only officials who were permitted to assume office as super-numeraries.[1] Act No. 288, Ala. Acts 1945, adopted July 7, 1945, created the position of supernumerary circuit judge. It is interesting that this was the same year the legislature created the State Employee's Retirement System. Act No. 515, Ala. Acts 1945, adopted July 9, 1945, is an early example of the legislature's attempt to deal with the problems created by an aging judiciary without retirement resources and a legislature without authority to provide for the retirement of judges. The act permitted any circuit judge who had served continuously for 15 years as a circuit judge, and who was not younger than age 70, or any circuit judge who had served not less than 25 years, the last 10 of which were continuous, to elect to become a supernumerary judge. If one met the statutory qualifications of a supernumerary judge, he was issued a commission as supernumerary circuit judge, with a term of 12 years. The act provided compensation *1004 of $3,000 per year and gave the supernumerary judges all powers prescribed by the constitution for judicial officers and authorized them to exercise all of the duties, powers, and authority of judges of the circuit courts of the state. This act was amended in 1961 (Act No. 41, Ala. Acts 1961) to permit a supernumerary circuit judge, at the call of the Chief Justice or Governor, to serve as an appellate judge, when needed. The office of supernumerary circuit judge was open to those who met the statutory requirements with regard to years of service and age, but such persons were not required to serve as supernumerary judges. The legislature merely provided such service as an option to those otherwise qualified.
The creation of supernumerary positions was admittedly an imperfect solution to a real problem. A supernumerary judge was not the equivalent of a retired judge. There may have been retired judges in 1945, but they were not retired with retirement benefits paid by the state. To receive compensation, a supernumerary judge was required to exercise the authority and to perform the duties of a circuit judge. The position of supernumerary judge was created because the office of retired judge did not exist. A supernumerary judge did not make contributions to a retirement fund, and his remuneration did not come from a retirement fund. He was compensated for duties performed as a supernumerary judge. If he did not or could not perform those duties, he was not entitled under the law to be compensated, no matter how long he had served as a circuit judge.
Although judges in Alabama are elected as other state officers are, neither the constitution nor the legislature has limited the number of terms a judge may serve. To the contrary, the number of terms other state officials may serve is frequently limited by the constitution or statute. Thus, judges typically have been career public servants, serving in office for many years, often long after they were physically or mentally capable of performing their best work. This reality no doubt influenced the legislature when it considered the supernumerary act passed in 1945.
In 1972, the legislature finally addressed the problem directly and proposed an amendment to the constitution that, for the first time, authorized the creation of a funded judicial retirement plan. In January 1972, the people ratified Amendment 317, which empowered the legislature to create a judicial retirement plan. In 1973, the legislature approved Act No. 1163, Ala. Acts 1973, Regular Session, which set up the Judicial Retirement Fund. This act provided for the eligibility and membership of all judges, trial and appellate, in the Judicial Retirement Fund. Amendment 317 was soon replaced by Amendment 328 (which adopted a new Article VI, commonly referred to as the "Judicial Article"). Section 6.16 of the Judicial Article again specifically provided for judicial retirement and endorsed the prior practice of remuneration for judicial supernumeraries. (In 1973 a small number of supernumerary judges were still serving under the 1945 act.) The Judicial Article again specifically authorized a judicial retirement plan and directed the legislature to provide for the retirement of all judges, with such conditions as it might prescribe. Subsequently, the legislature passed Act No. 1205, Ala. Acts 1975. The ultimate aim of this legislation was to create a unified court system, with uniform procedures and uniform treatment of all judges. The legislature recognized, however, that it was not writing upon a clean slate. Over the years it had addressed problems concerning judicial retirement with piecemeal measures. So, when it adopted Act No. 1205, there were judges with varying years of service, many compensated differently, some few serving as supernumerary judges, but none retired on a state retirement plan. Act No. 1205 repealed all legislation creating supernumerary judgeships and stopped the compensation of supernumerary *1005 judges once they became eligible for benefits under the new retirement law.
To achieve the uniformity envisioned by the Constitution, the legislature passed Act No. 566, Ala. Acts 1979 (§§ 12-18-40 and41, Ala.Code 1975), which provided that all judges (justices of the supreme court, judges of the courts of appeals and circuit judges) assuming office on or after July 30, 1979, shall be governed by that act and shall be entitled to the same retirement benefits. Judges who had assumed office before July 30, 1979, were covered under prior legislation, which the 1979 act recognized by including exceptions relating to age, computation of retirement pay, cost-of-living increases, and prior creditable service.[2] These judges, who had assumed office before July 30, 1979, like supernumerary judges, will ultimately be a thing of the past.[3]
The Judicial Retirement Fund legislation (codified at § 12-18-19 et seq.) had two aims: To set up a retirement system for all judges and to create a pool of "extra" judges to serve if they were needed and if they desired to serve. The 1973 and 1975 legislation accomplished these two aims, and the system it created, even the minority agrees, has worked. Both things worked in harmony. Judges were able to retire with full retirement benefits once they met the statutory requirements. Those who elected to do so were permitted to serve as "extra" judges.
This legislative scheme was intended to eliminate the much-maligned supernumerary-judge system, not to perpetuate it. Under the new scheme, a judge was lawfully entitled to retire with all of the benefits of the office of a retired judge. That benefit is fully vested once a judge qualifies under the statute. The benefits of retirement are not dependent upon the retired judge's performing as an "extra" judge, nor upon the retired judge's being available to serve as an extra judge. Any confusion in that regard stems from statements in Hogan v. Browner, supra, that erroneously linked the two. Those statements, linking the benefits of retirement to the office of a retired judge, were unnecessary to the holding in Hogan; they were wrong and they are hereby overruled. The correct rationale for the result in Hogan appears in Justice Almon's concurring opinion in that case.
The new law provided that retired judges, like supernumerary judges, could, at their option, actively serve as "extra" *1006 judges in various capacities, as the need arose, and provided that retired judges could be compensated for such service, depending upon the nature of the service. In the time since the legislature authorized the practice, nearly a quarter of a century, retired judges, both trial and appellate, have served in various capacities. Some have served full-time as "extra" judges on the Court of Civil Appeals and the Court of Criminal Appeals. Others have served full-time as "extra" circuit judges. Some others have served when, for a variety of reasons, a judge, whether trial or appellate, is recused or is otherwise disqualified in a particular case.
Since its inception, the Judicial Retirement Fund of Alabama has been administered by the secretary-treasurer of the State Employees' Retirement System, under the supervision of the Board of Control of the Employees' Retirement System. § 12-18-2(a). The Board of Control is the trustee of the Fund and administers the Fund pursuant to rules and regulations that apply to the State Employees' Retirement System funds. § 12-18-2.
The Constitution does not limit the authority of the legislature to provide retirement benefits for state employees, as it does with regard to state officials. The legislature has been, and is, free to provide benefits for state employees upon their retirement and to impose whatever restrictions it sees fit.
The legislature created the State Employees' Retirement System by enacting Act No. 515, Ala. Acts 1945. The original act provided that a retired employee, receiving retirement benefits, would forfeit those retirement benefits if he returned to work with the state at a "salary equal to or greater than his average final compensation" upon retirement. § 5(8). In 1953, the legislature amended the statute to suspend the payment of retirement benefits when a retired employee became reemployed by any state entity that participated in the State Employees' Retirement System. In Employees' Retirement System v. Nesmith, 644 So.2d 943 (Ala.1994), this Court upheld RSA's position and held that under § 36-27-16(e)(1), Ala.Code 1975 (codified from Act No. 79, Ala. Acts 1953), a retired state trooper's retirement benefits were to be suspended when he was reemployed by an entity participating in the Employees' Retirement System. The Nesmith case is not authority for the position taken by the Board in this present case. The holding in Nesmith was based upon the unambiguous language of an act of the legislature that suspends state retirement benefits when any retired state employee is reemployed by an entity that participates in the state employees' retirement plan. Unless otherwise instructed by constitutional provisions (state or federal) the legislature is free to impose certain restrictions on retired employees who are receiving retirement benefits. It may also eliminate any such restrictions. It did so with respect to teachers in 1973, with legislation that allows retired teachers to return to work under certain circumstances without suspension of retirement benefits. See § 16-25-26, Ala.Code 1975.
The legislature could similarly pass legislation to allow troopers, sheriffs, or any other category of retired state employees to be reemployed by the state or any of its entities without suspension of their state retirement benefits. It is within the legislative domain to determine whether it is in the public interest to restrict retired state employees from again becoming employees of the state, or to require a reduction or total suspension of their state retirement benefits if they do so. Likewise, the legislature has the power to permit retired state employees to be reemployed by the state and continue to draw retirement benefits. However, the legislature has not done so.[4]
*1007 Be that as it may, those issues are not before us. The single legal issue before us is whether § 280, Article XVII, of the Alabama Constitution of 1901, requires a retired state judge on inactive status, fully qualified under the Judicial Retirement Act, to forfeit state retirement benefits upon assuming office as an Article III, U.S. Const., federal district judge.
The Board of Control based its decision to suspend Judge Johnson's retirement benefits upon its reading of § 280 of the constitution and § 6.08(b) of Amendment 328. The Board contends that Judge Johnson holds two offices of profit at the same time, in violation of the Alabama constitution. It argues that Judge Johnson holds office as a retired state judge and is, therefore prohibited from holding another office (that of a United States district judge) at the same time. According to the board, Judge Johnson must give up one of the offices if she is to receive the benefits of the other. Because her appointment to the United States district judgeship is for life, under the Board's argument she will never be eligible to receive any state retirement benefits, unless she is impeached or resigns from the federal judgeship.
Section 280, Article XVII, Alabama Constitution of 1901, provides:
"No person holding an office of profit under the United States, except postmasters, whose annual salaries do not exceed two hundred dollars, shall, during his continuance in such office, hold any office of profit under this state; nor, unless otherwise provided in this Constitution, shall any person hold two offices of profit at one and the same time under this state, except justices of the peace, constables, notaries public, and commissioner of deeds."
This provision was originally included in the Alabama Constitution of 1819, as Article V, § 11. The 1819 constitution also provided in Article VI, § 12, that "No Member of Congress, nor any person holding any office of profit or trust under the United states ... shall hold or exercise any office of profit under this State." The Board argues that Judge Johnson cannot hold the office of federal judge and, at the same time, hold and enjoy the benefits of the state office of retired judge.
This Court has discussed the purpose of § 280 in the context of whether a United States postmaster could be elected probate judge:
"What is the significance of the phrase `hold office,' as used in the constitutional provisions which the statute designs to execute?
"Judge Freeman, with his usual accuracy, thus states the effect of such provisions: `In order to preserve a pure public policy, state Constitutions and statutes frequently provide that one and the same person shall not, at the same time, hold an office of profit or trust both under the state and under the national government, or that persons holding judicial offices shall not, at the same time, hold other offices of trust or profit, or that the same person shall not, at the same time, hold two offices of profit or trust, or the like. Such provisions cover substantially the same ground as the common-law inhibition against the same person holding incompatible offices at the same time, and they also, in many cases, go further, and arbitrarily prohibit the holding of two offices which, at common law, would not be deemed to be incompatible. Hence, if the holding of two offices by the same person, at the same time, is inhibited by the Constitution or statute, a forbidden incompatibility *1008 is created similar in its effect to that of the common law, and as in the case of the latter, it is well settled by an overwhelming array of authority that the acceptance of a second office of the kind prohibited operates, ipso facto, to absolutely vacate the first office'citing numerous authorities. See his monographic note to Attorney General v. Oakman, 126 Mich. 717, 86 N.W. 151, 86 Am. St. Rep. 583."
Shepherd v. Sartain, 185 Ala. 439, 447-48, 64 So. 57, 61 (1913). This Court concluded that the postmaster could be elected probate judge. "It is clear that the rule forbidding the holding of two offices at the same time, whether at the common law or under Constitutions and statutes, never contemplated a disability to be elected to the second office, but, on the contrary, conclusively affirms the legality and efficiency of such election. It is only the holdingthat is, the occupationof two offices at the same time that offends public policy, and is therefore forbidden by law." 185 Ala. at 448, 64 So. at 61-62. The constitutional prohibition of § 280, Article XVII, of the Alabama Constitution is directed against the holding of two inconsistent offices, which would result in the same individual's exercising power and discharging duties pertaining to different branches of the government. Scott v. Strobach, 49 Ala. 477 (1873), and State ex rel. Van Antwerp v. Hogan, 283 Ala. 445, 450, 218 So.2d 258, 262 (1969).
This Court has long recognized that not every "office" is an "office of profit." The meaning of the term "office" must be found in the specific context in which that term is employed:
"There are in legal parlance probably few words that have a greater variety of meanings, or shades of meaning, than the words `office' and `officer." Officers are divided into private and public, civil and military, national, federal, state, county, municipal, and many other classes of territorial designation; and into many other subdivisions and classifications, such as eleemosynary, health, and quarantine. When we speak of a public officer as a state, county, or municipal officer, we usually mean a person who, by lawful authority, has been invested with a part of the sovereign functions of government. A public office is, of course, a public employment; but every public employment is not a public office. The portion of the sovereign power thus delegated to the officer may belong to any of the three governmental departments; that is, legislative, executive, or judicial. A public agent or employe, of course, acts for his principal or employer. A public employment may be created by law, or by contract; but a public office can never be created by contract. Public officers are usually required to take an oath, and often, to make bond, and to keep an office or place of business; but none or all of these requirements do not absolutely determine whether or not a given employment is a public office, within the meaning of a given statute or constitutional provision....
"On account of this variety of meanings attaching to the words `office' and `officer," as used in various written laws, the adjudicated cases do not always, nor even often, furnish safe guides by which to determine with absolute certainty whether or not a given employment is an office [within] the meaning of a given statute or other written law. Every case must of necessity be determined by consideration of the particular facts and circumstances involved...."
Harrington v. State ex rel. Van Hayes, 200 Ala. 480, 481-82, 76 So. 422, 424 (1917) (holding that the position of "`all-time' health officer for a county" was not an "`office,' within the meaning of section 1467 of the Code of 1907").
In Ward v. State ex rel. Goldsmith, 203 Ala. 306, 82 So. 662 (1919), this Court held that a deputy sheriff is not prevented from also holding the office of bailiff (while acting as sheriff's deputy) under § 280, prohibiting *1009 the holding of two offices of profit at one time. See Kemp v. Wilson, 17 Ala.App. 224, 84 So. 636 (1919).
Judge Johnson contends that she is not violating § 280, Alabama Constitution of 1901, because, she says, she is both retired from the state bench and on inactive status, and, therefore, has no authority to exercise any "sovereign power" of the State of Alabama. This Court has held that "`[c]onstitutionally, "public office" implies an authority to exercise some portion of the sovereign power, either by enacting, executing or administering the laws.'" Edmonds v. Bronner, 547 So.2d 1172, 1174-75 (Ala.1989), quoting State ex rel. Gray v. King, 395 So.2d 6, 7 (Ala.1981) (emphasis added in Edmonds).
The Board argues that in order to receive payments from the Judicial Retirement Fund a judge must hold office as an extra judge of the state, citing § 12-18-7. The Board cites Hogan v. Bronner, 491 So.2d 226 (Ala.1986), in support of this argument. This argument is misplaced. That case did not involve § 280 of the Constitution, nor was § 12-18-7 implicated. In Hogan v. Bronner, this Court addressed the constitutional prohibition of § 60 of the constitution and the corresponding statutory provision, § 36-9-2, requiring the removal of a person from an office of trust or profit after conviction of certain crimes. Hogan was convicted for a crime committed while he was sitting as an active judge. The Court held that § 60 of the constitution required him to vacate the office as circuit judge and that the conviction of a felony while acting as a circuit judge carried with it the forfeiture of retirement benefits. Hogan did not involve § 280 of the constitution, as this case does, and thus it is not authority for the argument advanced by the Board. Hogan lost his right to receive retirement benefits because he was convicted of a crime for acts he committed while serving as a circuit judge.
Similarly, this Court held that a former sheriff was not eligible to hold office as a supernumerary sheriff because he had been convicted of a felony. James v. Thompson, 392 So.2d 1178 (Ala.1981). That result, like the result in Hogan, was based upon § 60 of the constitution. Section 280 of the constitution was not implicated in either of those cases; Section 60 of the Constitution is not implicated in this case.
While Hogan is distinguishable on its facts from this case and was based upon a separate provision of the state constitution, which has no application here, Hogan does contain dicta that are, at best, confusing and that are, most likely, simply wrong. The fact that a judge is required to vacate his office and forfeit all benefits upon conviction of a felony does not compel the conclusion that a judge with a fully vested pension (having met all statutory requirements for retirement benefits under state law) is required to forfeit that pension upon her appointment to the federal bench.[5]
The Alabama constitution, many legislative acts, the Canons of Judicial Ethics, and the legal literature and commentary all recognize a clear distinction between a retired judge on active status and a retired judge on inactive status. The Alabama Code provides that a retired judge has authority only when he has been requested by the Chief Justice to serve on a court in the absence or disqualification of a regular justice or judge and he has agreed to so. Section 12-18-7(b), Ala. Code 1975, reads as follows:
"(b) The retiring justice or judge, upon being retired, shall take the oath of office as a retired justice or judge and thereupon become an extra or additional judge of the state. Thereafter, on the request of the Chief Justice, the presiding *1010 judge of one of the courts of appeals or the Governor, any such retired justice or judge may serve on the Supreme Court, on either of the courts of appeals or on any circuit court in the state. Such retired justice or judge, when serving on a court in the absence or disqualification of the regular justice or judge, as the case may be, shall have and exercise all the duties and functions of the regular justice or judge for whom he is substituting. When serving on a court for reasons other than the absence or disqualification of the regular justice or judge, the duties of a retired justice or judge shall be as prescribed by the Chief Justice when serving on the Supreme Court or by the presiding judge when serving on a court of appeals or by the presiding judge, when serving in a circuit court; provided, that nothing contained in this provision shall prevent the Chief Justice from assigning a justice or a judge to special temporary duty in other courts. A recital in the minutes of the court that a regular justice or judge is absent or disqualified and that a retired justice or judge is sitting in his place at the request of the Chief Justice, the presiding judge of one of the courts of appeals or the Governor shall be conclusive evidence of his authority to act."
Thus, only when a retired judge has been requested to serve, has agreed to serve, and has been appointed to serve does the retired judge have the authority to exercise "sovereign power." § 12-18-7(b). A retired judge on inactive status does not meet any one of these three tests.
Section 12-18-10(e) recognizes a specific distinction between a retired judge and a retired judge on active status:
"(e) Every justice or judge who has retired pursuant to this article may, on the request of the Chief Justice, the presiding judge of a court of appeals or the Governor, be called to active duty status and, when serving with the Supreme Court or courts of appeals, shall perform such duties as may be prescribed by the Chief Justice or the presiding judge of the court of appeals with which he is serving and, when serving in a circuit court, shall perform such duties as may be prescribed by the presiding judge in the circuit. Such retired justice or judge of a court of appeals in such active service status shall receive an additional sum during the term of such service which, when added to his retirement benefits, would amount of $250.00 per month less than the monthly salary paid a justice or judge of the appellate court from which he has retired. The salary paid a retired circuit judge called to active service with the Supreme Court or a court of appeals shall be the salary paid a circuit judge in the circuit from which said judge retired. The salary paid a retired circuit judge called to active service as a circuit judge shall be the salary paid a regular judge in the circuit to which he is assigned or in the circuit from which he retired, whichever is greater. In no event, however, shall the total compensation paid to a retired circuit judge on active status during any calendar year exceed a sum which is $1,000.00 less than the compensation received by a regular judge in the circuit from which such judge retired."
It is clear from the statutes that while the Chief Justice "may" call any retired judge to active duty, a retired judge's assignment to active duty is strictly voluntary. The Chief Justice has no authority to order a retired judge to hear a case against his or her will. Section 12-18-8(b) provides that "such justice or judge shall indicate to the Chief Justice of the Supreme Court his desire as to inactive or active retired status." Thus, the retired judge must agree to such service and to a return to active status. § 12-18-7(b); § 12-18-10(e).
The deposition testimony of Frank Gregory, the administrative director of courts, and Starr McNees, judge-assignment specialist, reflects that the Administrative Office of Courts has administered *1011 the appointment of retired judges by respecting the desire of the retired judge as to whether he will be on inactive status or active status. They both testified that a judge who goes on inactive status is not called to active duty.
The Canons of Judicial Ethics also make distinctions between judges on active-duty status and those on inactive status. "The Canons are not merely guidelines for proper judicial conduct. It is well-settled that the Canons of Judicial Ethics have the force and effect of law." In re Sheffield, 465 So.2d 350, 355 (Ala.1984).
The first Code of Legal Ethics in the United States was formulated and adopted by the Alabama State Bar Association in 1887. This first Code was adopted with only minor changes by Georgia, Virginia, Michigan, Colorado, North Carolina, Wisconsin, West Virginia, Maryland, Kentucky, and Missouri between 1887 and 1907, and, finally, by the American Bar Association in 1908. Thus, Alabama has been a leader in the field of legal ethics. The current version of the Canons of Judicial Ethics was modeled after the American Bar Association model, but this Court adopted some of the ABA's recommendations and rejected others.
The Canons of Judicial Ethics, applicable to all judges on active-duty status, became effective February 1, 1976. The order adopting them included a provision that specifically addressed which of the canons were applicable to judges who were not serving on active-duty status. The Canons state that "[j]udges whose duties are not exclusively judicial or who do not serve on a full-time basis cannot be subjected to a strict, literal compliance with the Canons of Ethics." ("Compliance with the Canons of Judicial Ethics," section following Canon 7.) A part-time judge is not required to comply with Canon 5D., E., F., and G., or with Canon 6C. An acting judge pro tempore is not required to comply with Canon 5C.(3), D., E., F., and G., or with Canon 6C. A probate judge is not expected to comply with Canon 5B.(2), E. and G., or with Canon 6C. or Canon 7. See "Compliance with the Canons of Judicial Ethics," parts A, B., and C. Retired and supernumerary justices or judges not serving in an active-duty status "shall not be required to comply with any of these Canons." See "Compliance, etc.," part D. Retired and supernumerary justices who are serving part-time in an active-duty status shall be required to comply with all of these Canons, except Canon 5C.(3), D., E., F., and G. and Canon 6C. Retired and supernumerary justices and judges who are serving full-time on active-duty status "shall be required to comply with all of these Canons." See "Compliance, etc.," part D.
The section styled "Compliance with the Canons of Judicial Ethics," specifically addressing which of the Canons applied to judges not serving on active-duty status, was amended in 1980 to further clarify the status of retired judges. The Judicial Article, Amendment 328, Alabama Constitution, declares that "[t]he office of a judge shall be vacant if he ... retires." § 6.14. Section 12-18-9, Ala.Code 1975, provides:
"Whenever a justice of the Supreme Court or judge of one of the courts of appeals or judge of a circuit court of the state retires pursuant to this article the office then held by him shall become vacant, and the vacancy shall be filled as provided by Constitutional Amendment No. 328 or other applicable provisions of the Constitution."
(Codified from Act No. 1163, Ala. Acts 1973, § 8.)
Under the provisions of the Judicial Article, constraints are placed upon a judge's activities only "during his continuance in office." § 6.08(a). In 1980, this Court adopted a "Commentary" to the Canons of Judicial Ethics to make it clear that retired judges do not "continue in office" under § 6.08. The Commentary reads:
"Retired and supernumerary justices or judges are not continuing in office *1012 under § 6.08 of Amendment 328, Constitution of Alabama of 1901."
Thus a retired circuit judge on inactive status does not "continue in office."
Another distinction made by the Canons of Judicial Ethics is in regard to the activities in which a judge on active-duty status can participate versus those in which a retired judge on inactive status can participate. Canon 5E. states: "A judge should not act as an arbitrator or mediator." Canon 5F. states: "A judge should not practice law." Since these Canons became effective on February 1, 1976, arbitration and mediation have become commonplace. Many retired judges on inactive status receive their retirement benefits and also practice law and act as mediators and arbitrators. These retired judges are not violating the Canons.
Thus, it is clear that retired, inactive members of the judiciary who are governed by the Judicial Retirement System, are not holding an office, or exercising any power of the State, unless or until they return to active-duty status, either full-time or part-time. Throughout the Alabama Code and the Canons of Judicial Ethics, a distinction is made between judges on active-duty status and those who are inactive. A retired, inactive judge who meets all of the requirements of the Judicial Retirement Act is not holding an office at all. Certainly, he is not holding an office "of profit" as this term is used in § 280 of the Alabama Constitution of 1901.
Judge Johnson has taken the oath of a retired judge on inactive status of the State of Alabama and has been sworn in as a United States district judge. Hers is a lifetime appointment to the federal bench, subject only to removal by impeachment. Article III, § 1, United States Constitution; United States ex rel. Toth v. Quarles, 350 U.S. 11, 16, 76 S.Ct. 1, 100 L.Ed. 8 (1955). Therefore, Judge Johnson cannot be called back into "active" state service, § 12-18-7(b); Article III and Art. VI, cl. 2, United States Constitution. She is not "continuing in office under § 6.08 of Amendment 328, Constitution of Alabama of 1901." Commentary, Canons of Judicial Ethics. The suspension of her retirement benefits by the Board of Control divests her of an earned property right, in violation of the 14th Amendment of the United States Constitution.
Assuming, but not holding, that § 280 has not been superseded, insofar as it applies to judges, by Amendment 328 to the Alabama Constitution, we hold that a retired state judge, on inactive-duty status, is not holding an "office of profit" as contemplated by § 280. In this case, as a retired circuit judge on inactive status, Judge Johnson is not vested with any authority to exercise the sovereign power of the State of Alabama. She has no independent public duties incident to being a retired circuit judge. She is not invested with some portion of the sovereign functions of the state government, to be exercised by her for the benefit of the public, and she has no authority to exercise some portion of the sovereign power, either by enacting, executing, or administering the laws. In addition, as a retired judge, she is not "continuing in office," within the contemplation of § 6.08 of Amendment 328.
Thus, the Board's ruling suspending Judge Johnson's retirement benefits is reversed and a judgment is hereby rendered for Judge Johnson affirming her right to receive retirement benefits under the Judicial Retirement Fund.
REVERSED AND JUDGMENT RENDERED.
ALMON, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., concurs specially.
MADDOX, HOUSTON, SEE, and LYONS, JJ., dissent.
HOOPER, Chief Justice (concurring specially).
The excellently written majority opinion addresses the issues and concludes properly *1013 that Judge Inge Johnson is entitled to payment of her retirement benefits from the Retirement System of Alabama, as she and the State of Alabama agreed when she entered into the office of circuit court judge.
Justice Lyons, in his dissenting opinion, expresses concern as to the effect of Judge Johnson's inactive status, based on §§ 12-18-8(b) and -10(g), Ala.Code 1975. I have served as a circuit court judge. There is a very real distinction between an active retired judge and an inactive retired judge. As an inactive retired judge, I could not perform a marriage ceremony or even give my son, Perry Hooper, Jr., the oath of office to his legislative seat without being appointed specially by Chief Justice C.C. "Bo" Torbert to serve as an active judge. Until a retired circuit court judge is appointed to active duty, he or she is not, by any stretch of the imagination, anything more than an inactive retired circuit judge.
Although Justice Lyons's dissent implies that inactive-retired status does not differ from active-retired status,[6] the statutes dealing with this matter are clear, and the majority opinion points out the effect of the inactive status. Section 12-18-10(e) states: "Every justice or judge who has retired pursuant to this article may, on the request of the Chief Justice, the presiding judge of a court of appeals or the Governor, be called to active duty status...." (Emphasis added.) The statute twice uses precatory language ("may" and "request"). I, as the Chief Justice of the Alabama Supreme Court, would find it extremely difficult, relying on that statute, to require any retired judge to perform special duties when the statute says that I can "request" that retired judge to do so. The statute also states that the judge "may" be called to active-duty status. Even if I agreed with the rationale of Justice Lyons's dissenting opinionthat my statutory authority includes transferring inactive retired judges to active statusI must point out that I, as Chief Justice of the Alabama Supreme Court, have not exercised any such authority under § 12-18-10 to transfer Judge Johnson to active status as a retired judge and that she has not requested such status.
With respect to interpreting statutes in pari materia, I would also ask what § 12-18-8(b) refers to when it conditions the filing of the retirement certificate with the Judicial Retirement Fund upon "such justice or judge['s] ... indicat[ing] to the Chief Justice of the Supreme Court his desire as to inactive or active retired status." (Emphasis added.) Judge Johnson's indication of her desire for inactive status was not an attempt to avoid becoming an additional judge. The statute requires that she indicate her desire. Nothing in the relevant statutes indicates that inactive status results in some sort of lesser or deferred benefit for the retired judge, as advocated by the dissent.
Judge Johnson is on inactive status, and it is not clear, under the present statutory language governing judicial retirement, that the Chief Justice, the Governor, or any other presiding judge may by statute force her to perform the duties of a special judge. Therefore, I conclude that she is not presently holding "any office of profit under this state." Ala. Const. of 1901, § 280.
MADDOX, Justice (dissenting).
This expedited appeal involves a legal question that requires this Court to determine what the Legislature intended when it adopted the laws regulating entitlement to judicial retirement benefits. The appeal presents a very close question, and that is demonstrated by the split on the Court about the question.
*1014 The resolution of this case is made more difficult because the result reached by the majorityallowing a retired justice or judge to make the decision whether to be "active" or "inactive"is consistent with the practice that has been followed by every Chief Justice since the establishment of the retirement system. The legal question presented is one of first impression. It results from the fact that the Board of Control, which is statutorily charged with the administration of the Judicial Retirement System, has determined in this case that the appellant judge is not entitled, at this time, to receive judicial retirement benefits, and the fact that that judge has challenged that determination.[7]
Although this is admittedly a close case, I have studied the history of the establishment of the Judicial Retirement System, and I concur with the interpretation of the retirement statutes reached by the other dissenting Justices who conclude that the appellant judge has failed to satisfy the prerequisites of the retirement statutes and that she is, therefore, not entitled to retirement benefits at this time.
The facts and the constitutional and statutory provisions that are applicable to the legal issue presented are adequately stated in the majority opinion and in the other dissenting opinions, and I will not restate them here. I write separately only to set out some of the reasons that caused me to conclude that a retired judge is required to "take [an] oath of office as a retired justice or judge and thereupon become an extra or additional judge of the state," as specified in § 12-18-7(b), Ala. Code 1975, and that the appellant judge in this case has failed to comply with that requirement.
As noted in the various opinions, the Judicial Retirement System was first approved by the people when they adopted Amendment 317 to the Alabama Constitution of 1901,[8] which was later repealed and replaced by Amendment 328[9] (adopting a new Article VI, the Judicial Article). Pursuant to the authority granted it by Amendment 317, the Legislature adopted, in 1973, a large number of the statutory sections currently in force governing the Judicial Retirement System,[10] but a great deal of work had preceded the adoption of these constitutional amendments and related statutes, work done by a number of lawyers, judges, and outstanding citizens of this State. Although we are bereft of much legislative history of the establishment of the Judicial Retirement System, I have reviewed some of the materials that show the process that gave impetus to the establishment of a retirement system for judges. Based on my review of some of that material, I am convinced that the major purpose of the creation of the Judicial Retirement System was to replace the supernumerary system that was then in place, but that there was a secondary purpose, that being that a retired judge, if physically and mentally capable, would continue as an extra or additional judge of the State, subject to the call of the Chief Justice, who would have the discretion to permit a retired judge to elect whether to be "active" or "inactive"; this secondary purpose was basically being fulfilled then by the supernumerary system.
My review of available materials shows that the first major effort to address the *1015 issue of judicial retirement was made over 32 years ago, when, in December 1966, the Alabama State Bar, with the assistance of the American Judicature Society, convened the Citizens' Conference on Alabama State Courts. That conference was tasked with the responsibility of reviewing the state's judicial system and making recommendations for its improvement. Among the issues addressed by the conference were perceived problems in the level of judicial compensation, the need for a judicial retirement system, and the need to institute a better way of removing judges than existed at that time. In its "consensus statement," which became a blueprint for major changes in the judicial system that were implemented mainly in the 1970s, the Conference stated:
"Circuit and appellate court salaries are grossly inadequate even in the light of recent increases. If this state is to obtain and retain the services of competent judicial personnel, it is essential that salaries be raised to a level commensurate with the income of successful practicing lawyers. A uniform system of compensation for circuit judges throughout the state should be adopted, with provision for pay increases based on length of service and periodic review in the light of changing conditions.
"A retirement program to provide incentive and security for circuit and appellate judges and to assure efficient judicial administration is essential. Retirement should be mandatory at the age of 70 and voluntary at a lesser age after a specified period of service, with provision for periodic adjustment. Retired judges should be available for judicial service upon assignment of the Chief Justice."
"A Consensus Statement of the Citizens' Conference on Alabama's Judicial System," 28 Ala. Law. 190, 192 (April 1967) (emphasis added).
A Second Citizens' Conference was convened in 1973, and it also addressed the issue of judicial retirement. Michael House, who was an administrative aide to then Chief Justice Howell Heflin, prepared a paper for that Conference, which he entitled "Alabama Courts and Judges Today," dated March 1, 1973. In that paper, House outlined the law of judicial retirement.[11] A reading of House's analysis of *1016 *1017 Alabama law at that time shows that the Board of Control's argument in this case that "[t]he 1973 judicial retirement law was modeled after the judicial supernumerary laws set out in Title 13 of the Code of Alabama 1940," has merit, because the provisions of the laws relating to supernumerary judges are substantially identical to the provisions of the first retirement act passed by the Legislature establishing eligibility for judicial retirement.
Unfortunately, we do not have a history of the legislative debates that preceded the adoption of the Acts submitting Amendments 317 and 328 to the people, and we have no history of the legislative debates relating to the legislation implementing the constitutionally approved judicial-retirement system. However, it is my considered opinion that the Legislature intended that every retiring judge, in order to receive retirement benefits, must "take the oath of office as a retired justice or judge and thereupon become an extra or additional judge of the state," as specified in § 12-18-7(b), Ala.Code 1975. The requirement that the retired judge be available for judicial service is completely consistent with the recommendation made by the First Citizens' Conference. I believe further that, as an "extra judge" of the state, such a retired judge is required to serve if called by the Chief Justice to do so, although I know of no instance where a Chief Justice has required a retired judge to serve if he or she did not desire to serve. That was the scheme under the old supernumerary system, and, in my opinion, that was the scheme intended to be established under the new retirement laws.
Under the new system, a standard form has been adopted for use by judges applying for retirement. That form mirrors the language of the statute stating that a retiring judge takes an oath and becomes an "extra judge," and I cannot interpret the retirement laws to permit a retired judge the absolute discretion to determine when he or she will serve and, on this point, I would agree with the views expressed by Justice Lyons. In short, I believe the Legislature intended to give the Chief Justice the power to recall retired judges to active service at his discretion, a discretion which I believe each Chief Justice has exercised judiciously and fairly. Stated differently, I believe the passage quoted above, from the consensus statement of the 1966 Citizens' Conference, demonstrates the understanding that existed at that time, and which I believe the legislation incorporates, that the Chief Justice's authority to recall retired judges to service is unqualified.
Having said that, I recognize, of course, that the various Chief Justices who have served since the Judicial Retirement System was created have exercised their administrative discretion to refrain from recalling retired judges who did not desire to serve. That practice, however, does not change the meaning of the statutes in question.
The appellant is one of our state's most capable jurists, and she makes an excellent and almost persuasive argument, with which the majority agrees, that the statutes allow a retired judge to remain "inactive" and thus to receive retirement benefits while holding office as a United States district judge. Because I am so familiar with the history of judicial retirement in Alabama, I cannot bring myself to agree with her argument or the majority's interpretation in this case. Consequently, I must respectfully dissent.
SEE, Justice (dissenting).
I must respectfully dissent from the majority's conclusion that, under current law, the appellant may receive her state judicial-retirement pay while serving as a federal district judge. In my view, while § 280 of the Constitution of Alabama of 1901 does not prohibit such a result, the Legislature has not clearly provided that a person who holds an office of profit with *1018 the state or the Federal Government may receive judicial retirement benefits as an inactive retired judge.

I. Prior Law
Section 98 of the Alabama Constitution provides: "The legislature shall not retire any officer on pay, or part pay, or make any grant to such retiring officer." To provide some type of post-employment remuneration for judges, the Legislature enacted statutes creating the office of supernumerary judge. See Ala.Code 1940, §§ 31-33, 105(1)-(4), and 195(1)-(6). Under this system, supernumerary judges held, in effect, an inactive "office," but were subject to being called into active service by the Governor or the Chief Justice. This system assumed that because the supernumerary judges held an office and could be called to active service, the compensation they received was not retirement a benefit in the sense proscribed by the Constitution.

II. Current Law
In 1973, the people of Alabama ratified Amendment 328, adopting a new Article VI, § 6.16 of which provides: "The legislature shall provide by law for the retirement of judges, including supernumerary judges, with such conditions, retirement benefits, and pensions for them and their dependents as it may prescribe."[12] Thus, the device of allowing a retired judge to hold a supernumerary "office" and to receive compensation in lieu of constitutionally proscribed retirement benefits was no longer needed. The Legislature responded by enacting Ala.Code 1975, §§ 12-18-1 to -134, providing a funded judicial-retirement program. Much like the supernumerary judges under prior law, retired judges take an oath of office and may be called to active service by the Governor, the Chief Justice, or the presiding judge of one of the Courts of Appeals. § 12-18-7(b). Before being called into active service, however, a retired judge may not exercise any powers of office. Id.
The question presented in this appeal is whether a state judge, after retiring from state office, being placed on inactive status, and taking office as a federal district judge, may receive state judicial-retirement benefits. The answer to this question requires an analysis of § 280 of the Constitution and the judicial retirement statutes.

A. The Constitution
Section 280 of the Alabama Constitution provides:
"No person holding an office of profit under the United States, except postmasters, whose annual salaries do not exceed two hundred dollars, shall, during his continuance in such office, hold any office of profit under this state; nor, unless otherwise provided in this Constitution, shall any person hold two offices of profit at one and the same time under this state, except justices of the peace, constables, notaries public, and commissioner of deeds."
(Emphasis added.) If the office of an inactive retired state judge is an "office of profit" under § 280, the appellant's entry into the office of federal district judge would effect an automatic vacation of that state office. Smith v. State ex rel. Mayor & Town Council of Citronelle, 276 Ala. 378, 379, 162 So.2d 473, 474 (1964) ("[E]ntering upon the duties of a second office [of profit] operates, ipso facto, to absolutely vacate the first office [of profit].") (citing State ex rel. Camp v. Herzberg, 224 Ala. 636, 141 So. 553 (1932)). Section 280, however, deals with the exercise of power, not merely the label "office." Interpreting § 280, this Court has explained:
"`[T]o preserve a pure public policy, state Constitutions and statutes frequently provide that one and the same person shall not, at the same time, hold an office of profit or trust both under *1019 the state and under the national government, or that persons holding judicial offices shall not, at the same time, hold other offices of trust or profit, or that the same person shall not, at the same time, hold two offices of profit or trust, or the like. Such provisions cover substantially the same ground as the common-law inhibition against the same person holding incompatible offices at the same time, and they also, in many cases, go further, and arbitrarily prohibit the holding of two offices which, at common law, would not be deemed to be incompatible....'
"... It is only the holdingthat is, the occupationof two offices at the same time that offends public policy and is therefore forbidden by law.... [I]t is `the acceptance and qualification for the second office' which vacates the first, not merely the acceptance; the incompatibility of the two offices depending upon the inability of the holder to consistently discharge the duties of each."
Shepherd v. Sartain, 185 Ala. 439, 447-48, 64 So. 57, 61-62 (1913) (quoting Attorney General v. Oakman, 126 Mich. 717, 86 N.W. 151, 86 Am. St. Rep. 574, 582, 583 (1901)) (Freeman, J., monographic note) (emphasis added).[13] Thus, it is not the receipt of payment for the performance of prior duties, but the current discharge of duties affecting public policy in two offices at the same time that § 280 proscribes. This is consistent with the general law in other states:
"The prohibition against one person holding more than one office at the same time ... does not extend to a position which is a mere agency or employment.... Nor does a provision against holding another office apply to a position in the public service which is a mere sinecure without any duties attached to it."
42 Am.Jur. Public Officers § 61 (1942) (footnotes omitted).
In Reed v. Sehon, 2 Cal.App. 55, 83 P. 77 (1905), a court addressed whether California's constitutional provision corresponding to our § 280 prohibited a retired United States Army officer from taking office as a mayor.[14] The officer had been "retired from active service" pursuant to a federal statute, but, pursuant to various federal statutes, was subject to being called to duty at a soldier's home, duty with the state militia, duty as a professor, or, in time of war, active duty. Id. at 57, 83 P. at 78. The court then analyzed whether the office of a retired Army officer was an office of profit:
"Though the word `office' may be used in varying senses, the term in any proper sense implies, as indicated by its etymology, a duty or duties to be performed.... [T]his elementthat is, duty or service to be performedis an essential part of the definition....
"It also seems clear to us that, under the provisions of the statute cited, the position of the defendant is a mere sinecure without any duties attached to it; and hence that it cannot properly be *1020 called an office. It is true that a retired officer may be detailed to perform the duties of the several offices or employments specified in the statutory provisions that have been cited, such as an officer at a soldiers' home, or as a professor, or in connection with the militia of the state, or in the military service in time of war; but these are mere offices or employments to which he may be appointed; and until they happen no service can be required of him. Nor can the mere fact that he is subject to the remote contingency of being thus employed be regarded as such a duty as contemplated in the [constitutional] definition."
Id. at 57-58, 83 P. at 78-79 (emphasis added) (citations omitted).
The proposition that an "office," in the constitutional sense, requires the discharge of duties is also supported by this Court's interpretation of § 98 of the Alabama Constitution, which generally proscribes the payment of retirement benefits to public officers:
"`A public office is the right, authority, and duty, created by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. Lacey v. State, 13 Ala.App. 212, 68 So. 706 (1915). Constitutionally, `public office' implies an authority to exercise some portion of the sovereign power, either by enacting, executing or administering the laws.' [Quoting State ex rel. Gray v. King, 395 So.2d 6, 7 (Ala.1981) (emphasis added in Edmonds v. Bronner, infra).]
"This is in accord with Cobbs v. Home Ins. Co. of New York, 18 Ala.App. 206, 209, 91 So. 627, 629 (1921), in which the Court of Appeals held that for a person to be an `officer' under Ala. Const. § 98, `it is necessary that he have and exercise certain independent public duties incident to an officer created by law, carrying with it a part of the sovereignty of the state'; and with State ex rel. Hyland v. Baumhauer, 244 Ala. 1, 7, 12 So.2d 326, 330 (1942), in which this Court held that an `officer,' for purposes of Ala. Const. § 98, must be `vested with a part of the sovereignty of the State.'"[15]
Edmonds v. Bronner, 547 So.2d 1172, 1174-75 (Ala.1989).[16]
Under current law, it is clear that an inactive retired judge has no duties of his "office" that affect public policy and that he cannot exercise the sovereign power of the State unless and until the Chief Justice, or another superior officer, authorizes the retired judge to actively discharge the duties of a judicial office. Ala.Code 1975, § 12-18-7(b) (providing that a retired justice or judge shall take the oath of office and "[t]hereafter, on the request of the Chief Justice ... any such retired justice or judge may serve on the Supreme Court, on either of the courts of appeals or on any circuit court in the state" and "when serving on a court ... shall have and exercise all the duties and functions of [a] regular justice or judge") (emphasis added).[17] Absent *1021 authorization by the Chief Justice, or another superior officer, an inactive retired judge has no public-policy-affecting current duties to discharge or sovereign powers to exercise and, thus, does not hold an "office of profit" in the constitutional sense.[18] Accordingly, § 280 does not erect a constitutional impediment to an inactive retired state judge's holding the office and discharging the duties of a federal district judge.

B. The Statutes
Although § 280 does not prevent a person holding an office with active duties and powers from serving as an inactive retired judge eligible to receive retirement benefits, it is within the discretion of the Legislature whether such benefits are to be offered or eliminated. In 1973, pursuant to § 6.16 of Amendment 328 of the Alabama Constitution, the Legislature enacted Act No. 1163, Ala. Acts 1973. Neither Act No. 1163, nor its subsequent amendments, expressly deals with the issue whether a person occupying an office requiring the discharge of duties and the exercise of authority may qualify as a retired inactive judge eligible for retirement benefits. However, a portion of Act No. 1163, codified as § 12-18-7, provides as follows:
"(a) Any justice of the Supreme Court or any judge of one of the courts of appeals or of a circuit court of the state who desires to be retired pursuant to this article shall file a written declaration relative to his intention to elect such retirement with the Chief Justice of the Supreme Court, who, upon finding the existence of the conditions prerequisite to such retirement [e.g., length of service and/or age, under § 12-18-6], shall endorse his findings thereon and forward said declaration to the Secretary-Treasurer *1022 of the Judicial Retirement Fund.
"(b) The retiring justice or judge, upon being retired, shall take the oath of office as a retired justice or judge and thereupon become an extra or additional judge of the state. Thereafter, on the request of the Chief Justice, the presiding judge of one of the courts of appeals or the Governor, any such retired justice or judge may serve on the Supreme Court, on either of the courts of appeals or on any circuit court in the state. Such retired justice or judge, when serving on a court in the absence or disqualification of the regular justice or judge, as the case may be, shall have and exercise all the duties and functions of the regular justice or judge for whom he is substituting. When serving on a court for reasons other than the absence or disqualification of the regular justice or judge, the duties of a retired justice or judge shall be as prescribed by the Chief Justice when serving on the Supreme Court or by the presiding judge when serving on a court of appeals or by the presiding judge, when serving [o]n a circuit court; provided, that nothing contained in this provision shall prevent the Chief Justice from assigning a justice or a judge to special temporary duty in other courts."
(Emphasis added.) Under this section, a retired judge must satisfy four prerequisites to obtain judicial-retirement benefits: (1) he must meet the service, age, and other requirements of § 12-18-6; (2) he must file a declaration of intention to retire, with the Chief Justice; (3) he must take the oath of office as a retired judge; and (4) he must be subject to being called to active duty. Although the fourth requirement subject to being calledis not express, it is necessary in order to give a meaningful field of operation to the express provisions that a retired judge "take the oath of office" and that "nothing ... shall prevent the Chief Justice from assigning a ... judge to special temporary duty." Accord § 12-18-10(e) (stating that "[e]very ... judge who has retired pursuant to this article may, on the request of the Chief Justice ..., be called to active duty status and ... shall perform such duties as may be prescribed") (emphasis added).
Given the partial displacement of § 98 of the Alabama Constitution, which prohibits retirement pay for public officers, by § 6.16 of Amendment 328, which allows retirement pay for retired judges, there was no constitutional reason for the Legislature to follow the old supernumerary model. It did not need to characterize a post-employment judicial position as an "office" and its occupant as subject to being called to active duty. Yet, it did so. The Legislature could have included the subject-to-being-called prerequisite in order to provide the State with a resource of judges who could be called to active duty instead of requiring the State to create more full-time judgeships. This practical reason is consistent with the statutory language and provides it with meaning. See Elder v. State, 162 Ala. 41, 45, 50 So. 370, 371 (1909) (stating that it is unreasonable to hold that the Legislature employed meaningless words); Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.) ("`There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.'") (quoting 82 C.J.S. Statutes § 316 (1953)), cert. denied, 708 So.2d 911 (Ala.1997); McDonald v. State, 32 Ala. App. 606, 609, 28 So.2d 805, 807 (1947) ("A legislature will not be presumed to use language without any meaning or application....").
Since the 1973 enactment of Act No. 1163, the Retirement Systems of Alabama have consistently interpreted the Act to bar an inactive retired judge from receiving retirement benefits after entering a public office requiring the discharge of duties and the exercise of governmental *1023 powers. Affidavit of William T. Stephens. See Hulcher v. Taunton, 388 So.2d 1203 (Ala.1980) (stating that interpretations of a statute by an administrative agency responsible for implementing that statute are given great weight by the courts); McRae v. General Retirement System for Employees of Jefferson County, 536 So.2d 71, 72 (Ala.Civ.App.1988) ("Judicial deference is granted to decisions by administrative agencies because of their recognized expertise in specific specialized areas entrusted to them by the [L]egislature."). Further, in 1981, the attorney general issued an opinion stating that pursuant to § 12-18-7(b) an inactive retired judge may not hold another state office while drawing his judicial retirement pay.[19] Op. Att'y Gen. (May 19, 1981). We must presume that the Legislature has been aware of these interpretations of Act No. 1163. See Blue Cross & Blue Shield of Alabama, Inc., v. Nielsen, 714 So.2d 293, 297 (Ala. 1998) ("It is a familiar principle of statutory interpretation that the Legislature, in enacting new legislation, is presumed to know the existing law."). Nonetheless, the Legislature has not chosen to amend § 12-18-7, even though it has since amended the Act several times. See generally State, Dep't of Rev. v. Alabama Leasing Co., 336 So.2d 1353, 1356 (Ala.1976) (stating that by "re-enacting the first sentence of [a statute] without substantial change, the Legislature could be said to have adopted this Court's construction of that sentence") (citing Nolen v. Clark, 238 Ala. 320, 191 So. 342 (1939)). Given the history of the applicable constitutional and statutory provisions, the consistent interpretations by the Retirement Systems of Alabama and the attorney general, and the Legislature's choice not to change the results of those interpretations, I conclude that § 12-18-7 requires that an inactive retired judge, as a prerequisite to receiving judicial retirement benefits, be subject to being called to active duty. The appellant is not subject to being called to active service. She has voluntarily erected a constitutional impediment to being called to active service, by assuming the active duties of a federal district judge. Thus, under § 280 of the Alabama Constitution, she cannot, at the same time, assume active duties as a state judge.[20] See Shepherd, 185 Ala. at 448, 64 So. at 62 (stating that § 280 mandates that a person holding a federal office may not enter a state office until he first resigns the federal office). Consequently, the appellant has failed to satisfy the fourth statutory prerequisite that she be subject to being calledand is not entitled to retirement benefits, under § 12-18-7(b).[21]
I therefore dissent.
HOUSTON, J., concurs.
LYONS, Justice (dissenting).
I respectfully dissent from the majority's determination that Judge Johnson is *1024 presently entitled to her retirement benefits.
This case should be resolved solely on an analysis of whether Judge Johnson has complied with a clear statutory mandate in § 12-18-7(b), Ala.Code 1975, applicable to all who would claim a judicial retirement.[22] Because she has unilaterally modified the terms of the oath in an effort to avoid becoming a full-fledged "extra or additional judge of the state" as required by the statute, she is not presently entitled to state judicial retirement benefits. Until either the Legislature changes the statute or she complies with it, no such benefits are due. When she does comply, then, and only then, will we have before us the question whether her continued service as a judge of the United States violates § 280, Article XVII, Constitution of Alabama of 1901. Good arguments can be advanced on both sides, but the answer to the question should await another day. My focus is on compliance with the applicable statutes.
Judge Johnson's attempt to recast the terms of her obligation is significant because the statutes regulating retirement of a judge do not permit the retired judge to enjoy the prerogative of turning down a request for service once the judge has entered the ranks of retired judges. A majority of the Court relies on a phrase in § 12-18-8(b), which generally deals with allowing a judge to reenter the system after a lapse in service as a judge and, on such occasions, allows the judge to express a preference as to his or her status. However, § 12-18-10(g), dealing with a retired judge's request for transfer from active to inactive status, makes the request "subject to the approval of the chief justice."
These statutes are in pari materia, and statutes in pari materia should be construed together to ascertain the meaning of each; questions of their meaning should be resolved so that the statutes form one harmonious plan and give uniformity to the law. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). Section 12-18-10(g) should therefore be construed with § 12-18-8(b), and the latter statute's reference to the retired judge's entitlement to express a desire for inactive status upon entering retirement after a lapse in judicial service should be treated as merely affording an opportunity to express a preference for inactivity rather than creating a right for retired judges to opt out from further judicial service. An inactive judge is on stand-by status and is not, in effect, an ex-judge, as a majority of the Court appears to hold. Inactive judges are subject to the call of the Chief Justice. § 12-18-7(b). The requirements of the statute are not without basis, as an ex-judge would lack the requisite authority to serve if called upon.
That the Chief Justice may, as a matter of practice, honor a previously expressed preference not to serve cannot alter the language of the statute. In other words, where the Chief Justice may have discretion under the statute as to whom he or she may appoint, § 12-18-7(b) does not countenance discretion on the part of the appointee. I would read the word "may" as used in § 12-18-7(b) ("on the request of the Chief Justice, ... any such retired justice or judge may serve") as descriptive of the prerequisite that a justice or judge have authority to act and not as building in a right of a judge to decline to act.
For an example of a statutory scheme that creates a retirement benefit for an ex-judge that is simply an annuity paid at the rate of pay when a judge "retire(s) from the office," see 28 U.S.C. § 371(a) (emphasis added) (dealing with judges of the United States).[23] Compare it with 28 *1025 U.S.C. § 371(b), which allows a judge of the United States to "retain the office but retire from regular active service" if the judge performs certain duties, whereupon the judge receives the current amount paid to judges of the United States who have not retired, but if the retiree later does not meet certain production requirements, then the judge is paid at the rate payable when the judge ceased to qualify for full service. Judge Johnson apparently wants to "retire from the office," but the Legislature has not adopted a statute comparable to 28 U.S.C. § 371(a). While it may be an excellent idea for the Legislature to do so, that is a matter for the Legislature to determine.
The Board of Control contends that Judge Johnson's status leads to a forfeiture of her retirement benefits. The question whether § 12-18-8(b), Ala.Code 1975, relating to a judge who terminates his or her service before becoming eligible for retirement benefits, should apply to a judge whose eligibility is delayed by reason of § 280 of the Constitution is not before us. In addition, the question whether her status as a judge of the United States disables her from performing the duties of a retired judge is also not before us. The answers to those questions should wait until such time as she complies with the statute and simultaneously holds the office of judge of the United States.
Because Judge Johnson has attempted to create a position as an ex-judge, and that attempt is without a statutory basis, the order suspending her retirement benefits should be affirmed.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
HOOPER, C.J., and COOK, BROWN, and JOHNSTONE, JJ., and MARK KENNEDY, Special Justice, concur.
SEE, J., concurs specially.
MADDOX, HOUSTON, and LYONS, JJ., dissent.
SEE, Justice (concurring specially).
This case presents a close question of statutory construction. After careful reexamination, I believe the position stated in my dissent is correct, but, because the application for rehearing presents no new arguments, I agree that it is due to be denied.
NOTES
[1] A cursory search finds legislation authorizing persons from the following nonjudicial categories to serve as supernumeraries: certain county commissioners (§ 11-3-26), certain municipal planning commissioners (§ 11-52-3; § 11-52-14), certain board of adjustment members (§ 11-52-80), and tax collectors, tax assessors, license commissioners, etc. (§ 40-6-1 et seq.).
[2] There were some few serving as district judges before July 30, 1979, who later became either circuit judges or appellate judges. In Karrh v. Board of Control of the Employees' Retirement System, 679 So.2d 669 (Ala.1996), this Court held as follows:

"[W]e construe § 2 of Act No. 79-566 [Ala. Acts 1979,] to mean, when it says `any person with service as a judge of a district court,' that any person with such service before the enactment of Act No. 79-566 on July 30, 1979, may retire without reference to the exceptions in § 1, and that any person beginning service as a district judge on or after that date will be subject to the exceptions of § 1, just as persons first beginning judicial service as circuit or appellate court judges on or after that date will be. Thus, circuit judges and appellate judges who have formerly served as district judges will be subject to the same provisions as circuit and appellate judges who have not formerly served as district judges:
If they first assumed judicial office before July 30, 1979, they may retire pursuant to article 1 of chapter 18 of title 12, without reference to the exceptions adopted in § 1 of Act No. 79-566. If they first assumed judicial office on or after that date, the exceptions in § 1 of that Act apply to them."
Id. at 671-72. Thus, we held that a person's years of service as a district judge should be counted insofar as retirement was concerned. Now, all judges who took office on or after July 30, 1979, are governed by the provisions of Act No. 79-566.
[3] All judges who assumed office before the passage of Act No. 79-566 and who were actively serving at that time, had such retirement rights as were provided by Act No. 1163, Ala. Acts 1973, and Act No. 1205, Ala. Acts 1975, and were "grandfathered" in by Act No. 79-566, Ala. Acts 1979. This result is consistent with our holding in Karrh v. Board of Control, supra.
[4] One could argue that it would seem only fair to permit retired state employees to be reemployed by the state and again become contributing members of the employee retirement plan, because many current state employees, including judges, are receiving federal retirement pensions, from military service or other federal service, while contributing to and participating in the state retirement systems. The state does not require these federal retirees to forfeit their federal retirement benefits when they become state employees. Yet, the Board of Control argues that it can require a retired state official to forfeit her state retirement benefits when she assumes a federal position.
[5] The Board does not frame its argument in these exact terms, but to argue that Hogan controls this case is to argue that if a felony conviction disqualifies a state judge, so does an appointment to the federal bench. These two situations are not equivalent.
[6] Justice Lyons states: "Because [Judge Johnson] has unilaterally modified the terms of the oath in an effort to avoid becoming a full-fledged `extra or additional judge of the state' as required by the statute, she is not presently entitled to state judicial retirement benefits." 740 So.2d at 1024.
[7] The decision by the Board of Control to deny the appellant judge her benefits is apparently consistent with the position that agency has taken in other cases in which a judge who might be eligible for state-retirement benefits has accepted an office that would disqualify the judge from receiving those benefits from the State.
[8] This Amendment was proposed by Acts of Alabama 1971, No. 1187, and was submitted on January 18, 1972, and proclaimed ratified on January 27, 1972. Proclamation Register No. 2, p. 160.
[9] This amendment was proposed by Acts of Alabama 1973, No. 1051, and was submitted on December 18, 1973, and proclaimed ratified on December 27, 1973. Proclamation Register No. 3, p. 32.
[10] Act No. 1163, Ala. Acts 1973.
[11] Mr. House's paper read:

"JUDICIAL RETIREMENT IN ALABAMA
"Retirement provisions relating to the supreme court justices appear in Title 13, Sections 31-33 of the Alabama Code [of 1940]. They permit justices to elect voluntarily to go on what is termed supernumerary justice status in the following circumstances set out in Section 31. They may do so at a salary equal to seventy-five percent of the salary paid a justice. If a supernumerary justice is actively serving on the supreme court or court of appeals at the request of the chief justice, the presiding judge of one of the courts of appeals, or the governor, he shall receive an additional sum during the term of such service which, when added to the salary of a supernumerary justice, would amount to two hundred and fifty dollars less than the monthly salary of a justice. Removal from supernumerary status is by the impeachment procedure specified in Section 173 of the Alabama Constitution.
"Title 13, Section 31, Alabama Code:
"A. `The chief justice or any associate justice of the supreme court who becomes seventy years of age during the term for which he has been elected and is serving, and who is qualified to assume supernumerary status as herein below provided, must elect to become supernumerary justice at or before the expiration of the term he is then serving, otherwise he will be deemed to have waived and forfeited his right to elect to become a supernumerary justice.
"B. `The chief justice or any associate justice of the supreme court may elect to become a supernumerary justice if he
"`(1) Has served for fifteen years as a justice of the supreme court or as a judge of the court of appeals or circuit court or any two or more of them consecutively, the last twelve years of which has been continuous, and has reached or passed the age of sixty-five years; or
"`(2) Has served continuously for fifteen years as a justice of the supreme court or as a judge of the court of appeals or circuit court, or any two or more of them consecutively, and who has become physically unable to carry out his duties on a full-time basis, proof of such disability being made by certificate of three reputable physicians; or
"`(3) Has served continuously for fifteen years as a justice of the supreme court or as a judge of the court of appeals or circuit court, or any two or more of them consecutively, and has attained age sixty-five less one year for each year of service in excess of fifteen; or
"`(4) Has served continuously for ten years as justice of the supreme court or as a judge of the court of appeals or circuit court, or any two or more of them consecutively, and who is not less than seventy years of age; or
"`(5) Has served for twenty-four years as a justice of the supreme court or as a judge of the court of appeals or circuit court, or any two or more of them consecutively, or for not less than four terms the last ten years of such service having been continuous. Such election by such supreme court justice shall be made by filing, while in the service, a written declaration with the governor, who, upon finding the existence of conditions as herein specified shall endorse his approval thereon.'
"Circuit judges may assume supernumerary status also under circumstances provided in Title 13, Section 195(1). Removal is only by impeachment for causes specified in Section 173 of the Constitution.
"Title 13, Section 195(1), Alabama Code:
"`Any circuit judge, or former circuit judge of this state:
"`(a) Who has served continuously for twelve years as circuit judge and/or district attorney, and/or circuit solicitor, and/or as judge of a court of record; and who has become physically unable to carry out his duties on a full-time basis, proof of such disability being made by certificate of three reputable physicians; or
"`(b) Who has served for fifteen years as circuit judge and/or district attorney, and/or circuit solicitor, and/or judge of a court of record; and who is not less than sixty-two years of age; or, who has served as such for more than fifteen years and has attained age 62 less one year for each year of service in excess of 15; or
"`(c) Who has served continuously for ten years as circuit judge and/or district attorney, and/or circuit solicitor, and/or as judge of a court of record (provided that not more than three years service as a judge of a court of record shall be included in the total number of years served); and who is not less than seventy years of age; or
"`(d) Who has served in that office and/or as circuit solicitor, and/or as district attorney, and/or as judge of a court of record (provided that not more than three years service as a judge of a court of record shall be included in the total number of years served); for not less than 24 years, or for not less than four terms, the last 10 years of such service having been continuous, may elect to become a supernumerary circuit judge of the state by filing a written declaration to that effect with the governor at any time not more than 90 days prior to the end of the 24 year period; or
"`(e) Who has served for at least seventeen years as a circuit judge and/or circuit solicitor, and/or district attorney, and/or deputy circuit solicitor, and/or deputy district attorney (provided that he has served more than five years as a circuit judge; provided further that his service as a circuit solicitor, and/or district attorney, and/or deputy circuit solicitor, and/or deputy district attorney, counted to meet the required period of seventeen years of service is continuous; provided further that his appointment to the office of deputy circuit solicitor, and/or deputy district attorney was made by the circuit solicitor, and/or district attorney who immediately succeeded him in the office of circuit solicitor, and/or district attorney and provided further that his service as deputy district attorney terminated not more than three years prior to his first assuming the office of circuit judge) and who is not less than eighty years of age; or
"`(f) Who has served continuously for not less than eighteen years as a circuit judge; may elect to become [a] supernumerary circuit judge of the state by filing a written declaration to that effect with the governor. If the governor shall find that any such declarant qualified under either subdivision (a), (b), (c), (d), (e), or (f), hereinabove set forth, a commission as supernumerary circuit judge of the state of Alabama shall thereupon be issued to such declarant by the governor. The office of circuit judge made vacant by the election of such declarant shall be filled by appointment of the governor as now provided by law. This section shall apply only to circuit judges who have been elected to that office.'
"A supernumerary circuit judge receives a salary of $9,600 a year unless he is called to service by the governor or chief justice. Then he will receive a salary equal to a regular judge as long as he serves. If he is serving on the supreme court or a court of appeal[s], he will receive a salary equal to a circuit judge. (Title 13, Section 195(4).) Additional compensation is allowed in judicial circuits composed of one county and having more than four circuit judges. (Title 13, Section 195(6) and 195(7).)"
Michael House, "Alabama Courts and Judges Today," paper written for the Second Citizens' Conference on Alabama State Courts, Montgomery, March 1, 1973 (emphasis added).
[12] Amendment 317, ratified in 1971, also provided for retirement benefits for judges and justices. In 1973, however, Amendment 328 repealed Amendment 317 and substituted the provisions of § 6.16 in dealing with the retirement benefits of judges and justices.
[13] Section 6.08(b) of Amendment 328 of the Constitution of Alabama of 1901 provides:

"No judge, except a judge of a probate court, shall seek or accept any nonjudicial elective office, or hold any other office of public trust, excepting service in the military forces of the state or federal governments."
(Emphasis added.) It is clear that this provision prohibits a person from exercising the powers of a judicial office and exercising the powers of another office of public trust at the same time. Because an inactive retired judge does not exercise the powers of a judicial office, § 6.08(b) would not prevent a retired inactive judge from holding an office of public trust.
[14] California's constitution provided:

"No person holding any lucrative office under the United States, or any other power, shall be eligible to any civil office of profit under this state: provided that officers in the militia, who receive no annual salary, local officers, or postmasters whose compensation does not exceed five hundred dollars per annum, shall not be deemed to hold lucrative offices."
[15] In Edmonds, 547 So.2d at 1175 n. 1, this Court also noted that the "authority to exercise power" definition of "office" applies broadly to constitutional provisions other than § 98.
[16] In Edmonds, 547 So.2d at 1175-77, this Court determined that although a statute provided that a public-school superintendent was an "officer," the superintendent was not an "officer" in the constitutional sense because he did not have "any independent duties incident to his office carrying with it a part of the sovereignty of the State." Similarly, although § 12-18-7(b) refers to the "oath of office as a retired judge," including inactive retired judges, the statutory label of "office" is not controlling for constitutional purposes. Instead, the constitutional inquiry goes to the actual duties and powers of the position held by the inactive retired judge.
[17] Consistent with a duty-premised definition of "office," the Canons of Judicial Ethics recognize that an inactive retired judge does not actually have any judicial duties unless and until he is called to active service:

"D. Retired and Supernumerary Judges.
"(1) Retired and supernumerary justices or judges, who are not serving on the Supreme Court or on either of the courts of appeals or on any circuit court or district court in the state, in an active duty status, shall not be required to comply with any of these Canons.
"(2) Retired and supernumerary justices or judges, who are serving part time on the Supreme Court or on either of the courts of appeals or on any circuit court or district court in the state, in an active duty status,
shall be required to comply with all of these Canons, except Canon 5C(3), D, E, F, G, and Canon 6C.
"(3) Retired and supernumerary justices and judges, who are serving full time at the request of the chief justice, on the Supreme Court or on either of the courts of appeals or on any circuit court or district court in the state, in an active duty status, shall be required to comply with all of these Canons."
"Compliance with the Canons of Judicial Ethics," section following Canon 7.
[18] I note that in interpreting § 60 of the Alabama Constitution, this Court has previously held that supernumerary officers perform duties of a public office, even though no duties are actually performed, and none could be performed, until the supernumerary officer is called to active service. See, e.g., James v. Thompson, 392 So.2d 1178, 1180 (Ala.1981) ("Although the duties of such office are limited in scope and the performance of such duties [is] contingent and narrowly defined, the statutorily prescribed position and function... [are those] of a public office...."). This legal fiction enabled courts to characterize payments to retired judges as "compensation" for current services instead of retirement pay for past services, thus avoiding § 98's proscription on retirement pay. See Opinion of the Justices, No. 347, 665 So.2d 1382, 1384 (Ala.1995) (opining that the creation of honorary legislative offices with remuneration would not violate § 98's proscription on retirement pay because of this legal fiction); see also James, 392 So.2d at 1180 (stating that a supernumerary sheriff must be characterized as a public officer and noting that "[o]therwise, the compensation provisions of the Act clearly would run afoul of § 98 of our State Constitution").

While the legal fiction of the performance of duties not yet assigned and the exercise of power not yet invested is well established in this Court's § 60 jurisprudence, I am unwilling to extend it to control § 280. Unlike § 60, § 280 deals with the actual discharge of duties and exercise of power of two offices at the same time. Thus, James, which is binding precedent for interpretation of § 60, is not binding precedent for this case.
[19] Although the decisions of the Retirement Systems of Alabama and the attorney general's opinion rely on what I deem to be an erroneous interpretation of § 280 of the Alabama Constitution, the result was to deny inactive retired judges retirement benefits if they took another office.
[20] This analysis is consistent with the result reached in Hogan v. Bronner, 491 So.2d 226 (Ala.1986). In Hogan, 491 So.2d at 227, this Court held that a retired judge's conviction for bribery prevented him from further serving as a retired judge and collecting retirement benefits. Although this Court based its holding in part on James v. Thompson, 392 So.2d 1178, 1180 (Ala.1981), and the legal fiction of using potential "duties" to make a supernumerary office an "office" under § 60 of the Alabama Constitution, the judge's conviction of a felony offense erected a constitutional impediment to his being subject to call. Because the bribery conviction barred the judge from ever holding any office of trust or profit in the State of Alabama, (Alabama Constitution of 1901, § 60), he was no longer subject to being called to active duty and was, therefore, not entitled to retirement benefits, under § 12-18-7(b).
[21] Because the appellant has failed to satisfy the fourth statutory prerequisite, I pretermit a discussion of whether her modified oath was sufficient to satisfy the third statutory prerequisite.
[22] Section 12-18-7(b) provides:

"The retiring justice or judge, upon being retired, shall take the oath of office as a retired justice or judge and thereupon become an extra or additional judge of the state."
(Emphasis added.)
[23] Retirement from the office of judge of the United States is available to judges who meet certain age and service requirements. For example, a judge who has served 15 years upon reaching age 65 may retire from the office. 28 U.S.C. § 371(c).